UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEPOSITORS INSURANCE COMPANY, and ALLIED PROPERTY & CASUALTY INSURANCE COMPANY

      Plaintiffs,

vs.

WTA TOUR, INC., a corporation, and
MADISON BRENGLE, an individual

      Defendants.

_____/

CASE NO.:

## COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. § 2201, *et seq.* and Federal Rule of Civil Procedure 57, the Plaintiffs, Depositors Insurance Company ("Depositors") and Allied Property & Casualty Insurance Company ("Allied"), file this Complaint for Declaratory Judgment against the Defendants, WTA Tour, Inc. ("WTA") and Madison Brengle ("Ms. Brengle"), and state as follows:

### PRELIMINARY STATEMENT

1. This declaratory judgment action is brought for the purpose of determining an actual controversy between the parties with respect to a premier business owners policy issued by Depositors and commercial umbrella liability insurance policy issued by Allied to Defendant, WTA.

2. Depositors and Allied seek a judgment declaring that each has no duty to defend WTA with respect to a demand for arbitration made by Brengle against WTA, as described more fully below.

**JURISDICTION & VENUE**

3. Depositors is, and was at all times material hereto, a foreign corporation incorporated in the State of Iowa, domiciled in and with its principal place of business in the State of Ohio.

4. Allied is, and was at all times material hereto, a foreign corporation incorporated in the State of Iowa, domiciled in and with its principal place of business in the State of Ohio.

5. Allied is a proper party to this action by virtue of language of the applicable policy and the amount of damages sought in Ms. Brengle's demand for arbitration.

6. WTA is, and was at all times material hereto, a foreign corporation incorporated in the State of New York, domiciled in and with its principal place of business in Pinellas County in the State of Florida.

7. Ms. Brengle is, and was at all times material hereto, a natural person domiciled in, and a citizen of, Manatee County in the State of Florida.

8. Ms. Brengle is a proper party to this action, as her rights will be impacted by the Court's declaration in this matter; thus, she has been named in this action so she will be bound by the Court's ultimate decree.

9. Complete diversity of citizenship exists in this matter.

10. The amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees.

11. Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

12. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(1), because both Defendants reside in this judicial district.

## GENERAL ALLEGATIONS

13. Depositors issued a Premier Businessowners Policy to WTA Tour, Inc., with policy number ACP BPOD 3016980284, which has effective dates from January 1, 2016 to January 1, 2017 ("Primary Policy"). A true and correct copy of the Primary Policy is attached as Exhibit A.

14. Allied issued a Commercial Umbrella Liability Insurance Policy to WTA Tour, Inc., with policy number ACP CAP 3016980284, which has effective dates from January 1, 2016 to January 1, 2017 ("Umbrella Policy"). A true and correct copy of the Umbrella Policy is attached as Exhibit B.

15. On April 9, 2018, Ms. Brengle filed a lawsuit in Manatee County, Florida, against WTA, as well as against ITF Limited a/k/a International Tennis Federation ("ITF"), International Doping Tests & Management AB ("IDTM"), Stuart Miller ("Mr. Miller") and John Snowball ("Mr. Snowball"), which was captioned, *Brengle v. WTA Tour, Inc., et al.*, Manatee County Circuit Court Case No. 2018-CA-001576.

16. On May 8, 2018, Ms. Brengle's lawsuit was removed to federal court in the matter captioned, *Brengle v. WTA Tour, Inc., et al.*, U.S.D.C. for M.D., Case No. 8:18-cv-1126 ("Brengle Lawsuit").

17. On May 15, 2018, WTA filed a Motion to Compel Arbitration and Stay the Brengle Lawsuit.

18. On June 8, 2018, Ms. Brengle filed a Motion to Sever her claims against WTA from her claims against the remaining defendants and a Motion to Remand with respect to the non-WTA defendants.

19. On June 25, 2018, the District Court granted Ms. Brengle's Motion to Sever and further granted WTA's Motion to Compel Arbitration and Stay the Brengle Lawsuit pending an arbitral decision.

20. On July 24, 2018, Ms. Brengle filed an Arbitration Demand for $9,999,999.00 through the American Arbitration Association against WTA in the matter captioned, *Brengle v. WTA Tour, Inc.* ("Demand"). A true and correct copy of the Demand is attached as Exhibit C.

21. On August 23, 2019, Depositors and Allied issued a reservation of rights letter to WTA in which Depositors offered a defense to WTA for the Demand – subject to the reservation of rights described in the letter. A true and correct copy of the Reservation of Rights letter is attached as Exhibit D.

22. Among the reservations of rights identified in Depositors' August 23, 2019 letter was the material reservation of rights regarding Depositors' right to seek reimbursement of defense fees, which stated that "Depositors may seek payment or contribution from the WTA or others for those uncovered claims in connection with the defense, settlement, or satisfaction of any judgments obtained against the WTA. Depositors and Allied also reserve the right to seek reimbursement for all or a part of any such payments."

23. Despite offering the defense to WTA on August 23, 2019, WTA's first responsive communication to Depositors was May 19, 2020 – nine (9) months after the offer – which contained, for the first time, purported rejections of various reservations of rights, including the reservation of rights regarding reimbursement of defense fees.

1017865\306907641.v1

24. WTA has attempted to repudiate the defense offered by Depositors.

25. Depositors and Allied dispute WTA's repudiation of the defense offered by Depositors subject to a reservations of rights.

## THE DEMAND

26. The Demand asserts six causes of action against WTA: (1) battery; (2) intentional infliction of emotional distress; (3) negligence; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing and; (6) permanent injunction. *See* Demand, ¶¶ 144-175. Each pf these causes of action are predicated upon venipuncture (i.e., the process of obtaining intravenous access to blood through a person's vein). Demand, ¶ 3, 12.

27. Ms. Brengle alleges that when she is subjected to "venipuncture blood testing, the procedure causes extreme pain as well as swelling, numbness and bruising at and in the vicinity of the injection site." Demand, ¶ 4.

28. Ms. Brengle alleges that WTA "forced" Ms. Brengle "to undergo venipuncture blood testing despite WTA knowing about, and witnessing the consequences of, the effects of the procedure on Brengle." Demand, ¶ 5.

29. Ms. Brengle alleges venipuncture blood draws interfere with her ability to practice before tournaments and to compete in tournaments." Demand, ¶ 10.

30. Ms. Brengle alleges she "has been wrongfully and unjustly forced to undergo venipuncture blood testing in (1) in June 2009 at the Wimbledon Championships Grand Slam; (2) in January 2016 at the Australian Open Grand Slam; (3) in June 2016 at the Wimbledon Championships Grand Slam; and (4) in August 2016 at the U.S. Open Grand Slam. *See* Demand, ¶¶ 49-94.

31. Regarding the June 2009 Wimbledon tournament, Ms. Brengle alleges that "[d]uring the venipuncture blood draw, the phlebotomist's first two attempts to access the vein on the inside portion of Brengle's left elbow failed. On the third attempt to draw blood, the phlebotomist accessed Brengle's vein, which collapsed almost immediately, and Brengle lost consciousness." Demand, ¶ 51.

32. Regarding the January 2016 Australian Open tournament Brengle alleges that just prior to the Australian Open venipuncture testing, a phlebotomist "hit a nerve bundle in Brengle's arm" which resulted in pain – despite the prior application of a numbing cream – and "[a]fter the failed venipuncture blood draw attempt, Brengle experienced hot pain radiating from the site of the venipuncture injection." ¶¶ 56-58.

33. Ms. Brengle alleges that after losing a match at the 2016 Wimbledon Championships, she was informed that she "was required to undergo a WTA-mandated blood test." Demand, ¶64. "Thereafter, Brengle explained to the 2016 Wimbledon doctor that she could not have blood drawn from her arm. The doctor would not agree to refrain from drawing blood but opted to administer the procedure on Brengle's foot rather than in her arm." Ms. Brengle further alleges that she "experienced severe pain and bruising from the venipuncture," lost feeling in the leg where the physician inserted the needle and continues to experience sharp pain in the vein from which the blood was collected at Wimbledon, as well as pain and decreased performance in the right foot.". *See* Demand, ¶¶ 73, 80.

34. Ms. Brengle alleges that at the August 2016 U.S. Open tournament, Ms. Brengle alleges that "[u]pon insertion of the needle, Brengle experienced severe pain from her right forearm down to her right hand. Demand, ¶¶ 90, 94.

35. Ms. Brengle alleges that on February 15, 2018, and despite the one year exemption, a Doping Control Officer appeared at Ms. Brengle's residence and stated she had to submit to a urine test as well as a venipuncture test. *See* Demand, ¶¶ 126, 128, 130. Ms. Brengle further alleges that she had extreme swelling in her right hand as a result of the venipuncture "compromising her ability to play tennis and causing significant pain and mental suffering." Demand, ¶ 143.

36. Pursuant to the terms, conditions, endorsements and exclusions of the Primary Policy, Depositors is in doubt as to its duty to defend WTA with respect to the claims asserted by Ms. Brengle against WTA in the Demand.

37. Pursuant to the terms, conditions, endorsements and exclusions of the Umbrella Policy, Allied is in doubt as to its duty to defend WTA with respect to the claims asserted by Ms. Brengle against WTA in the Demand.

38. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

39. Pursuant to the terms, conditions, endorsements and exclusions of the Primary Policy, Depositors is in doubt as to its duty to defend WTA with respect to the claims asserted by Ms. Brengle against WTA in the Demand.

40. Pursuant to the terms, conditions, endorsements and exclusions of the Umbrella Policy, Allied is in doubt as to its duty to defend WTA with respect to the claims asserted by Ms. Brengle against WTA in the Demand.

41. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

**THE PRIMARY POLICY**

42. The Primary Policy issued by Depositors provides, in pertinent part, the following insuring agreement:

**LIABILITY COVERAGE FORM**

**I.  COVERAGES**
**A.  COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
    **1.  INSURING AGREEMENT**
        **a.**  We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

        HOWEVER, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

* * *

        **b.**  This insurance applies to "bodily injury" and "property damage" only if:
            **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

* * *

Primary Policy, Form PB 00 06 11 14, pp. 2-3 of 23.

43. The Primary Policy issued by Depositors provides, in pertinent part, the following definitions:

**V.  DEFINITIONS**

* * *

    **3.**  **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

    **13.**  **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Primary Policy, PB 00 06 11 14, pp. 19-21 of 23.

44. The Primary Policy issued by Depositors provides, in pertinent part, the following exclusions:

> **2. EXCLUSIONS**
>
> This insurance, including any duty we have to **defend "suits", does not apply to:**
>
> * * *
>
> **v.   Professional Services**
>
> "Bodily injury" or "property damage" that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to, any:
>
> * * *
>
> **(4)** Medical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction;
>
> * * *
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an **insured, if the "occurrence" which caused the "bodily injury" or "property damage"** involved the rendering or failure to render of any professional service.
>
> * * *

Primary Policy, PB 00 06 11 14, pp. 3, 12, 13 of 23.

45. The Umbrella Policy issued by Allied provides, in pertinent part, the following insuring agreements:

> **A.   Coverage A – Excess Follow Form Liability Insurance**
> **1.**   Under Coverage A, we will pay on behalf of the "insured" that part of "loss" covered by this insurance in excess of the total applicable limits of "underlying insurance", provided the injury or offense takes place during the Policy Period of this policy. The terms and conditions of "underlying insurance" are, with respect to Coverage A, made a part of this policy except with respect to:
> **a.**   any contrary provision contained in this policy; or

   **b.** any provision in this policy for which a similar provision is not contained in "underlying insurance"

* * *

 **4.** Notwithstanding anything to the contrary contained above, if "underlying insurance" does not cover "loss" for reasons other than exhaustion of an aggregate limit of insurance by payment of claims, then we will not cover such "loss".

 **5.** We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

* * *

**B.** **Coverage B – Umbrella Liability Insurance**

 **1.** Under Coverage B, we will pay on behalf of the "insured" damages the "insured" becomes legally obligated to pay by reason of liability imposed by law because of "bodily injury", "property damage", or "personal and advertising injury" covered by this insurance which takes place during the Policy Period and is caused by an "occurrence". We will pay such damages in excess of the Retained Limit Aggregate specified in the Declarations or the amount payable by "other insurance", whichever is greater.

* * *

 **5.** Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance",

* * *

Umbrella Policy, Form UMB 00 02 04 13. pp. 2-3 of 20.

  46. The Umbrella Policy issued by Allied provides, in pertinent part, the following defense provisions:

**Applicable to Coverage A and Coverage B**

**A.** We have the right and the duty to assume control of the investigation, settlement or defense of any claim or "suit" against the "insured" for damages covered by this policy:

 **1.** under Coverage A, when the applicable limit of "underlying insurance" has been exhausted by payment of claims; or

 **2.** under Coverage B, when damages are sought for "bodily injury", "property damage", or "personal and advertising injury" to which no "underlying insurance" or other insurance applies.

* * *

**C.** In those circumstances where paragraph A. above does not apply we do not have the duty to assume control of the investigation, settlement or

10

>defense of any claim or "suit" against the insured. We do, however, have the right to participate in the investigation, settlement or defense of any claim or "suit" that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

* * *

Umbrella Policy, Form UMB 00 02 04 13, pp. 3-4 of 20.

47. The Umbrella Policy issued by Allied provides, in pertinent part, the following definitions:

>**DEFINITIONS**
>**A.   Applicable to Coverage A and Coverage B**
>As used in Coverage A and Coverage B:
>
> * * *
>
>4. "Loss" means those sums actually paid in the settlement or satisfaction of a claim which the "insured" is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.
>
> * * *
>
>6. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>7. "Other insurance" means a policy of insurance affording coverage that this policy also affords. "Other insurance" includes any type of self-insurance or other mechanism by which an "insured" arranges for funding of legal liabilities.
>
>   "Other insurance" does not include "underlying insurance" or a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.
>
> * * *
>
>13. "Underlying insurance" means the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy, including any type of self-insurance or alternative method by which the "insured" arranges for funding of legal liabilities that affords coverage that this policy covers.
>
>    "Underlying insurance" does not include any Extended Reporting Periods on the policies shown in the Declarations. Extended Reporting Periods must be endorsed onto this policy by us.
>
> * * *
>
>**B.   Applicable to Coverage A Only**
>As used in Coverage A:

11

  1. "Injury or damage" means any injury or damage covered in the applicable "underlying insurance" arising from an "occurrence".

* * *

**C.** **Applicable to Coverage B Only**
As used in Coverage B:

* * *

**2.** "Bodily injury" means physical injury, sickness or disease to a person and, if arising out of the foregoing, mental anguish, mental injury, shock or humiliation, including death at any time resulting therefrom.

* * *

Umbrella Policy, Form UMB 00 02 04 13, pp. 12-15 of 20.

48. The Umbrella Policy issued by Allied provides, in pertinent part, the following exclusions:

**Exclusions**

* * *

  **C.** **Applicable to Coverage B Only**
  Under Coverage B, this insurance does not apply to:

* * *

  12. Professional Services

   "Bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

* * *

   **e.** Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;
   **f.** Any health or therapeutic service treatment, advice or instruction;

* * *

   **h.** Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body-building or physical training programs;

* * *

Umbrella Policy, Form UMB 00 02 04 13, pp. 9-11 of 20.

## COUNT I.  DECLARATORY JUDGMENT AS TO
## THE PRIMARY POLICY AGAINST WTA

49. Depositors realleges and incorporates by reference its allegations in paragraphs 1 through 48 above.

50. An actual, present and existing controversy has arisen between the parties as to Depositors' obligations, if any, with respect to the claims being asserted against WTA by Ms. Brengle in the Demand.

51. Depositors seeks a judicial declaration of no duty to defend WTA, and therefore no duty to indemnify WTA, on the grounds that the allegations in the Demand are not covered by the Primary Policy and are excluded from coverage based on the above-referenced policy provisions, including the Professional Services Exclusion.

52. Based upon the Primary Policy's Professional Services Exclusion, Depositors has no obligation under the Primary Policy to retain counsel to defend WTA against the Demand.

53. There is a bona fide, actual, present need for the declaration of Depositors' rights and obligations under the Primary Policy, if any.

54. This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Primary Policy and will, therefore, serve the interests of justice.

55. Depositors has no adequate remedy at law.

WHEREFORE, for the reasons stated above, Depositors requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under Depositors' Primary Policy, including, but not limited to, the following:

1017865\306907641.v1

    A.    That Depositors has no duty to defend WTA against the Demand, and therefore no duty to indemnify WTA;

    B.    That Depositors has no duty to pay for the attorney's fees and costs expended in the defense of WTA for the Demand; and

    C.    That Depositors be awarded any such further relief in law or in equity to which it may be entitled.

### COUNT II. DECLARATORY JUDGMENT AS TO THE ALLIED UMBRELLA POLICY AGAINST WTA

56. Allied realleges and incorporates by reference its allegations in paragraphs 1 through 48 above.

57. An actual, present and existing controversy has arisen between the parties as to Allied's obligations, if any, with respect to the claims being asserted against the WTA by Ms. Brengle in the Demand.

58. Allied seeks a judicial declaration of no duty to defend the WTA, and therefore no duty to indemnify, on the grounds that the allegations in the Demand are not covered by the Umbrella Policy and are excluded from coverage based on the above-referenced policy provisions, including the Professional Services Exclusion.

59. Based upon the Umbrella Policy's Professional Services Exclusion, Allied has no obligation under its Umbrella Policy to retain counsel to defend WTA against the Demand.

60. There is a bona fide, actual, present need for the declaration of Allied's rights and obligations under the Umbrella Policy, if any.

61. This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Umbrella Policy and will, therefore, serve the interests of justice.

62. Allied has no adequate remedy at law.

WHEREFORE, for the reasons stated above, Allied requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under Allied's Umbrella Policy, including, but not limited to, the following:

A. That Allied has no duty to defend WTA against the Demand, and therefore no duty to indemnify WTA;

B. That Allied has no duty to pay the attorney's fees and costs expended in the defense of WTA for the Demand; and

C. That Allied be awarded any such further relief in law or in equity to which it may be entitled.

Dated: May 4, 2021.                    Respectfully submitted,

/s/ Edward T. Sylvester
Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Edward T. Sylvester
Florida Bar No. 051612
esylvester@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Boulevard, Fourth Floor
Coral Gables, Florida 33134-6044
(T): 305-358-7747 – (F): 305-577-1063
*Depositors Insurance Company* and *Allied Property & Casualty Insurance Company*