UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:21-cv-01069-VMC-JSS

DEPOSITORS INSURANCE COMPANY and
ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,

    Plaintiffs,

v.

WTA TOUR, Inc., a corporation, and
MADISON BRENGLE, and individual,

    Defendants.
_____/

## DEFENDANT WTA TOUR, INC.'s ANSWER AND AFFIRMATIVE DEFENSES

Defendant WTA Tour, Inc. ("WTA"), by its undersigned counsel, hereby responds to Plaintiffs Depositors Insurance Company ("Depositors") and Allied Property & Casualty Insurance Company's ("Allied") (collectively "Plaintiffs") Complaint, as follows:

### INTRODUCTION

1.     WTA admits that this purports to be an action seeking a declaratory judgment filed by Plaintiffs in an attempt to avoid their contractual obligations owed to WTA.

2.     WTA denies that Plaintiffs are entitled to the relief sought.

### JURISDICTION AND VENUE

3.     Upon information and belief, WTA admits the allegations in paragraph 3.

4.     WTA is without knowledge sufficient to admit or deny the allegations in paragraph 4 and denies such allegations on that basis.

5.     Paragraph 5 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies the allegations in paragraph 5.

6. WTA admits the allegations in paragraph 6.

7. WTA is without knowledge sufficient to admit or deny the allegations in paragraph 7 and denies such allegations on that basis.

8. Paragraph 8 states a legal conclusion to which no response is required.

9. Paragraph 9 states a legal conclusion to which no response is required. To the extent a response is required, WTA is without knowledge sufficient to admit or deny the allegations in paragraph 9 and denies such allegations on that basis.

10. Paragraph 10 contains jurisdictional allegations and legal conclusions to which no response is required.

11. Paragraph 11 states a legal conclusion to which no response is required. To the extent a response is required, WTA is without knowledge sufficient to admit or deny the allegations in paragraph 11 and denies such allegations on that basis.

12. Paragraph 12 states a legal conclusion to which no response is required. To the extent a response is required, WTA is without knowledge sufficient to admit or deny the allegations in paragraph 12 and denies such allegations on that basis.

## GENERAL ALLEGATIONS

13. WTA admits that Depositors issued a premier businessowners policy to WTA, policy number ACP BPOD 3016980284, with a "policy period" of January 1, 2016 to January 1, 2017 (the "Depositors Policy"). WTA admits that Plaintiffs have attached a copy of the Depositors Policy to their Complaint as Exhibit A. WTA further states that the Depositors Policy speaks for itself and denies the allegations in paragraph 13 to the extent inconsistent with the Depositors Policy.

14. WTA admits that Allied issued a commercial umbrella liability insurance policy to WTA, policy number ACP CAP 3016980284, with an effective date from January 1, 2016 to January 1, 2017 (the "Allied Policy"). WTA admits that Plaintiffs have attached a copy of the Allied Policy to their Complaint as Exhibit B. WTA further states that the Allied Policy speaks for itself and denies the allegations in paragraph 14 to the extent inconsistent with the Allied Policy.

15. WTA admits the allegations in paragraph 15.

16. WTA admits the allegations in paragraph 16.

17. WTA admits the allegations in paragraph 17.

18. WTA admits the allegations in paragraph 18.

19. WTA admits the allegations in paragraph 19.

20. WTA admits that on July 24, 2018, an arbitration demand (the "Arbitration Demand") was filed against WTA, captioned *Madison Brengle v. WTA Tour, Inc.*, with the American Arbitration Association (the "Underlying Action[1]"). WTA admits that Plaintiffs have attached a copy of the Arbitration Demand to their Complaint as Exhibit C. WTA denies Plaintiffs' characterizations of the Underlying Action and refers to the Arbitration Demand, which speaks for itself.

21. WTA admits that Plaintiffs attached a document to their Complaint, purporting to be a letter, which was sent on August 23, 2019 (the "August 23 Letter"), from Depositors and Allied to WTA. WTA denies Plaintiffs' characterizations of the August 23 Letter and refers to the August 23 Letter, which speaks for itself.

---

[1] The Underlying Action refers to the lawsuit filed by Brengle and removed by WTA as well as the later filed arbitration, which was filed after this Court compelled Brengle to arbitrate her claims against WTA.

22. Paragraph 22 purports to discuss and quote portions of the August 23 Letter. WTA denies Plaintiffs' characterization of the August 23 Letter and refers to the August 23 Letter, which speaks for itself.

23. WTA denies the allegations in paragraph 23.

24. Paragraph 24 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies the allegations contained in paragraph 24.

25. WTA denies the allegations in paragraph 25.

### THE DEMAND

26. In response to paragraph 26, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 26 to the extent inconsistent with the Arbitration Demand.

27. In response to paragraph 27, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 27 to the extent inconsistent with the Arbitration Demand.

28. In response to paragraph 28, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 28 to the extent inconsistent with the Arbitration Demand.

29. In response to paragraph 29, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 29 to the extent inconsistent with the Arbitration Demand.

30. In response to paragraph 30, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 30 to the extent inconsistent with the Arbitration Demand.

31. In response to paragraph 31, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 31 to the extent inconsistent with the Arbitration Demand.

32. In response to paragraph 32, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 32 to the extent inconsistent with the Arbitration Demand.

33. In response to paragraph 33, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 33 to the extent inconsistent with the Arbitration Demand.

34. In response to paragraph 34, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 34 to the extent inconsistent with the Arbitration Demand.

35. In response to paragraph 35, WTA states that the Arbitration Demand from the Underlying Action speaks for itself and denies the allegations in paragraph 35 to the extent inconsistent with the Arbitration Demand.

36. WTA denies the allegations in paragraph 36.

37. WTA denies the allegations in paragraph 37.

38. Paragraph 38 states a legal conclusion to which no response is required.

39. WTA denies the allegations in paragraph 39.

40. WTA denies the allegations in paragraph 40.

41. Paragraph 41 states a legal conclusion to which no response is required.

## THE PRIMARY POLICY[2]

42. In response to paragraph 42, WTA states that the Depositors Policy speaks for itself and denies the allegations in paragraph 42 to the extent inconsistent with the Depositors Policy.

43. In response to paragraph 43, WTA states that the Depositors Policy speaks for itself and denies the allegations in paragraph 43 to the extent inconsistent with the Depositors Policy.

44. In response to paragraph 44, WTA states that the Depositors Policy speaks for itself and denies the allegations in paragraph 44 to the extent inconsistent with the Depositors Policy.

45. In response to paragraph 45, WTA states that the Allied Policy speaks for itself and denies the allegations in paragraph 45 to the extent inconsistent with the Allied Policy.

46. In response to paragraph 46, WTA states that the Allied Policy speaks for itself and denies the allegations in paragraph 46 to the extent inconsistent with the Allied Policy.

47. In response to paragraph 47, WTA states that the Allied Policy speaks for itself and denies the allegations in paragraph 47 to the extent inconsistent with the Allied Policy.

48. In response to paragraph 48, WTA states that the Allied Policy speaks for itself and denies the allegations in paragraph 48 to the extent inconsistent with the Allied Policy.

## COUNT I. DECLARATORY JUDGMENT
## AS TO THE PRIMARY POLICY AGAINST WTA

49. WTA repeats and realleges its answers to paragraphs 1-48 as if restated herein verbatim.

50. Paragraph 50 states a legal conclusion to which no response is required.

51. Paragraph 51 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies that Plaintiffs are entitled to such relief.

---

[2] Plaintiffs title this section "The Primary Policy," which they define as the policy issued by Depositors. However, within this section, they also include allegations related to the policy they have titled the "Umbrella Policy," which they define as the policy issued by Allied. *See* Plaintiffs' Complaint at ¶¶ 45-48.

52. Paragraph 52 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies the allegations in paragraph 52.

53. Paragraph 53 states a legal conclusion to which no response is required.

54. Paragraph 54 states a legal conclusion to which no response is required.

55. Paragraph 55 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies the allegations in paragraph 55.

The WHEREFORE clause following Paragraph 55 states legal conclusions or otherwise provides characterizations of Plaintiffs' Complaint to which no response is required. To the extent that the WHEREFORE clause following paragraph 55 makes factual allegations against WTA, those allegations are denied and WTA otherwise denies that Plaintiffs are entitled to the declaration they seek.

### COUNT II. DECLARATORY JUDGMENT
### AS TO THE ALLIED UMBRELLA POLICY AGAINST WTA

56. WTA repeats and realleges its answers to paragraphs 1-48 as if restated herein verbatim.

57. Paragraph 57 states a legal conclusion to which no response is required.

58. Paragraph 58 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies that Plaintiffs are entitled to such relief.

59. Paragraph 59 states a legal conclusion to which no response is required. To the extent that a response is required, WTA denies the allegations in paragraph 59.

60. Paragraph 60 states a legal conclusion to which no response is required.

61. Paragraph 61 states a legal conclusion to which no response is required.

62. Paragraph 62 states a legal conclusion to which no response is required. To the extent a response is required, WTA denies the allegations in paragraph 62.

63. All allegations in Plaintiffs' Complaint that are not specifically admitted by WTA herein are expressly denied.

The WHEREFORE clause following Paragraph 62 states legal conclusions or otherwise provides characterizations of Plaintiffs' Complaint to which no response is required. To the extent that the WHEREFORE clause following paragraph 62 makes factual allegations against WTA, those allegations are denied and WTA otherwise denies that Plaintiffs are entitled to the declaration they seek.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE: BREACH OF TERMS OF POLICY

64. WTA entered into valid insurance contracts with Depositors and Allied.

65. Under the terms of the Depositors Policy and the Allied Policy, each Plaintiff had a duty to defend and indemnify WTA in connection with the Underlying Action.

66. Depositors and Allied each previously recognized and admitted that they had such a duty.

67. To date, Depositors and Allied have offered no defense in the Underlying Action and have not reimbursed WTA for the costs and fees incurred.

68. Thus, Depositors and Allied have breached their respective policies and WTA has suffered damages by expending costs and fees that should have been covered and/or reimbursed by Plaintiffs.

### SECOND AFFIRMATIVE DEFENSE: WAIVER AND ESTOPPEL

69. Due to their conduct in this matter, Plaintiffs have waived or should be estopped from avoiding their duty to defend WTA in the Underlying Action.

70. In fact, in the August 23 Letter (attached to Plaintiffs' Complaint), Plaintiffs acknowledged that they had a duty to defend WTA in the Underlying Action.

71. Plaintiffs' claims are therefore barred by the doctrines of waiver and/or estoppel, and Plaintiffs have a duty to defend WTA in the Underlying Action.

### THIRD AFFIRMATIVE DEFENSE: UNCLEAN HANDS

72. Plaintiffs should be barred from obtaining the relief they seek due to their own unclean hands.

73. Pursuant to the terms of the Depositors and Allied policies, Plaintiffs have a duty to defend and indemnify WTA in the Underlying Action.

74. No policy exclusions apply to bar coverage for the Underlying Action.

75. Plaintiffs have wrongfully denied their duty to defend WTA in the Underlying Action.

### FOURTH AFFIRMATIVE DEFENSE: RESERVATIONS OF ADDITIONAL DEFENSES

76. WTA reserves and asserts all affirmative defenses available under any applicable federal and state law, and reserves the right to supplement or amend these affirmative defenses or raise any other affirmative defenses as this matter proceeds.

WHEREFORE, WTA prays that the Court enter judgment:

A. Determining the Plaintiffs each have a duty to defend WTA in the Underlying Action.

B. Granting WTA its costs of suit, expenses, and attorney's fees expended and incurred herein, including but not limited to, pursuant to Florida Statute sections 627.428 and 626.9373, with post and pre-judgment interest; and,

C. Granting WTA such other and further relief as the Court deems just and appropriate.

## WTA TOUR INC.'S COUNTERCLAIM

Defendant/Counter-Plaintiff WTA Tour Inc. ("WTA"), by and through its undersigned counsel, for its counterclaim against Plaintiff/Counter-Defendant Depositors Insurance Company ("Depositors" or "Counter-Defendant") states as follows:

## NATURE OF THE ACTION

1. This breach of contract counterclaim arises out of Depositors' breach of its duty to defend WTA in an action brought by Madison Brengle (the "Underlying Action").

2. Even though Depositors recognized its duty to defend WTA, Depositors has neither defended nor reimbursed WTA for the attorney's fees and costs incurred in connection with WTA's defense of the Underlying Action.

3. Depositors has therefore breached its insurance contract with WTA and this counterclaim is brought to recover damages naturally flowing from Depositors' breach.

## PARTIES

4. WTA is a not-for-profit corporation organized under the laws of New York with its principal place of business in St. Petersburg, Florida.

5. As Depositors alleges in its Complaint and upon information and belief, Depositors is a foreign corporation incorporated in the State of Iowa with its principal place of business in the State of Ohio.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between WTA and Counter-Defendant and because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Counter-Defendant because it is an insurance company that has made continuous and systematic contact with Florida, is licensed as an insurer in Florida, and brought the instant action in Florida.

8. Under 28 U.S.C. § 1391, venue is proper in the Middle District of Florida because this action is already pending in this Court, a substantial portion of the events at issue took place in this District, and Depositors transacts business as an insurance company in this District, and therefore, is a resident of this District.

## FACTUAL ALLEGATIONS

I. **The Underlying Action**

9. Through the Underlying Action, Brengle raises tort and contractual claims against WTA for her alleged injuries that she claims resulted from venipuncture blood testing.

   A. *Procedural History*

10. On April 9, 2018, Brengle filed a complaint in the Circuit Court of the 12th Judicial Circuit in and for Manatee County, Florida against WTA, International Tennis Federation, International Doping Tests & Management AB, Stuart Miller, and John Snowball (collectively, the "Underlying Action Defendants"), thereby initiating the Underlying Action.

11. Prior to taking any action in state court in response to Brengle's Complaint, WTA timely removed the Underlying Action to the Middle District of Florida. *See Brengle v. WTA Tour Inc.*, No. 8:18-cv-01126-SDM-TGW, ECF No. 1 (May 8, 2018).

12. Following removal, on May 15, 2018, WTA moved to compel arbitration and stay Brengle's lawsuit. *See Brengle*, No. 8:18-cv-01126-SDM-TGW at ECF No. 7.

13. Brengle subsequently moved to sever her claims against WTA and remand her lawsuit against the remaining Underlying Action Defendants to state court. Further, Brengle did

not oppose WTA's demand to arbitrate. *See Brengle*, No. 8:18-cv-01126-SDM-TGW at ECF No. 19.

14. On June 25, 2018, the Court granted WTA's Motion to Compel Arbitration as to Brengle's claims against WTA. The Court also severed Brengle's claims against WTA and remanded the remainder of the action, i.e., the claims against the remaining Underlying Action Defendants, to state court. *See Brengle*, No. 8:18-cv-01126-SDM-TGW at ECF No. 25.

15. On July 24, 2018, Brengle filed an arbitration demand against WTA with the American Arbitration Association. *See* Exhibit C to Plaintiffs' Complaint, ECF No. 1-4.

### B. Factual Allegations

16. Brengle's arbitration demand arises out of her contention that WTA required her to undergo "anti-doping blood testing," which allegedly injured Brengle due to a "rare but medically-diagnosed physical condition." Arbitration Demand at 1 ¶ 1, ECF No. 1-4 at 2.

17. WTA denies that it is liable for any of the claims raised in the Underlying Action; however, for the purposes of this duty to defend counterclaim, the allegations within the Arbitration Demand are determinative of whether Depositors must defend WTA in the underlying action.

18. According to the Arbitration Demand, Brengle suffers from a "rare medical condition known as Complex Regional Pain Syndrome," which is "induced by venipuncture (*i.e.*, the process of obtaining intravenous access to blood through a person's vein)." Arbitration Demand at 2 ¶ 3, ECF No. 1-4 at 3.

19. According to the Arbitration Demand, Brengle has been a professional tennis player on the WTA Tour since 2007. Arbitration Demand at 1-2 ¶ 2, ECF No. 1-4 at 2-3.

20. According to the Arbitration Demand, Brengle claims that WTA has "forced" her to "undergo venipuncture blood testing despite [] knowing about, and witnessing the consequences of, the effects of the procedure on Brengle." Arbitration Demand at 2 ¶ 5, ECF No. 1-4 at 3.

21. According to the Arbitration Demand, WTA requires its members to comply with the "ITF Limited a/k/a International Tennis Federation's Tennis Anti-Doping Program and accepts authority of ITF to manage, administer, and enforce the Anti-Coping Program." *Id.*

22. Further, the Arbitration Demand generally[3] alleges that WTA forced Brengle to undergo venipuncture blood testing before, during, or after certain tennis tournaments throughout the years, including during 2016.

23. As a result of her alleged injuries, Brengle raised the following claims in the Arbitration Demand: (I) Battery; (II) Intentional Infliction of Emotional Distress; (III) Negligence; (IV) Breach of Contract; (V) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (VI) Permanent Injunction.

## II. The Relevant Insurance Policy

24. Depositors issued an insurance policy to WTA, which obligates it to defend WTA in the underlying action.

25. Specifically, Depositors issued a Premier Businessowners Policy to WTA (the "Depositors Policy"), policy number ACP BPOD 3016980284, with effective dates from January 1, 2016 to January 1, 2017. *See* Exhibit A to Plaintiffs' Complaint, ECF No. 1-2.

26. In relevant part, the Depositors Policy provides the following coverage:

A. COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

---

[3] WTA does not further detail the allegations in the Arbitration Demand and instead, for the purposes of resolving the issue of Depositors' duty to defend, refers to the Arbitration Demand that is attached to Plaintiffs' Complaint as Exhibit C.

> 1. INSURING AGREEMENT
>
>> a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.
>>
>> . . . b. This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

Depositors Policy at PB 00 06 11 14, pages 2-3, ECF No. 1-2 at 64-65.

27. Relevant here, the Depositors Policy provides the following definitions:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> . . . 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Depositors Policy at PB 00 06 11 14, pages 19, 21, ECF No. 1-2 at 81, 83.

28. Because the claims raised in the Underlying Action allege a "bodily injury" that occurred during the policy period, Depositors is and has been obligated to defend WTA in that action.

### III. Communications with Depositors

29. WTA timely notified Depositors of the Underlying Action and demanded that Depositors defend WTA. In this regard, WTA provided notice of the Underlying Action when it was initially filed in state court. Once the arbitration was filed, WTA also provided Depositors with a copy of the Arbitration Demand.

30. Even though Depositors clearly had (and still has) a duty to defend WTA in the Underlying Action, Depositors initially asserted that it lacked such a duty. Specifically, by letter

dated October 2, 2018 (the "October 2 Letter"), Depositors and Allied[4] informed WTA that they declined coverage and refused to defend WTA in the Underlying Action. A true and correct copy of the October 2 Letter is attached hereto as **Exhibit A.**

31. On December 18, 2018 (the "December 18 Letter"), WTA, through undersigned counsel, responded to the October 2 Letter, stating that Depositors had a duty to defend WTA in the Underlying Action and explaining why that is so. A true and correct copy of the December 18 Letter is attached hereto as **Exhibit B.**

32. The next day, Depositors acknowledged receipt of the December 18 Letter and indicated that it would provide a response to the December 18 Letter.

33. On February 15, 2019, Depositors again indicated that it would provide a response to the December 18 Letter and intended to provide such a response in the near future.

34. As of February 28, 2019, no response to the December 18 Letter had been provided, prompting WTA (through counsel) to inquire as to the status of Depositors' response. In response, Depositors stated that it was continuing to review WTA's December 18 Letter and it would provide a response in the near future.

35. Finally, Depositors provided a response on August 23, 2019. By letter dated August 23, 2019, Depositors and Allied retreated from their erroneous position and acknowledged a duty to defend WTA in the Underlying Action; however, they did so under a reservation of rights. *See* Exhibit D to Plaintiffs' Complaint, ECF No. 1-5.

36. By letter dated May 14, 2020 (the "May 14 Letter"), Depositors asked WTA whether it had "accepted Depositors' defense, intend[ed] to provide invoices and [would] provide

---

[4] The October 2 Letter, as well as other subsequent correspondence, was sent on behalf of both Depositors and Allied. As discussed, Depositors provides primary coverage to WTA and Allied provides excess coverage.

the status of the Arbitration." A true and correct copy of the May 14 Letter is attached hereto as **Exhibit C.**

37. In response, on May 19, 2020 (the "May 19 Letter"), WTA (through undersigned counsel) apprised Depositors of the status of the Underlying Action and demanded payment for legal fees and costs incurred in defending WTA in the Underlying Action. A true and correct copy of the May 19 Letter is attached hereto as **Exhibit D.**

38. As requested, WTA provided invoices with the May 19 Letter, substantiating the cost of WTA's defense in the Underlying Action.

39. In the May 19 Letter, WTA also responded to Depositors' reservation of rights, as described in the August 23 Letter, and explained why such reservation of rights was inappropriate and unfounded.

40. Having received no response to the May 19 Letter, WTA (through counsel) followed up on June 12, 2020 and inquired as to when WTA could expect a response.

41. On June 26, 2020, Depositors indicated that it anticipated it would be able to respond in the "near future."

42. As of August 31, 2020, Depositors had still not responded to the May 19 Letter. As a result, on August 31, 2020, WTA (through counsel) reached out to Depositors again in the hopes of obtaining WTA's overdue reimbursement for the defense costs incurred in the Underlying Action.

43. As of September 22, 2020, Depositors had still not responded to the May 19 Letter, prompting WTA to follow up yet again. On that day, WTA specifically inquired when Depositors would reimburse WTA for defense costs expended in the Underlying Action.

44. Depositors and Allied finally responded to the May 19 Letter on September 25, 2020. However, neither Depositors nor Allied remitted any payment for WTA's defense.

45. Instead, by letter dated September 25, 2020 (the "September 25 Letter"), Depositors and Allied stated that the provided defense was done so under a reservation of rights. At the time the letter was sent, neither insurance company had provided a defense and neither had paid a single dollar of the fees or costs WTA incurred in defending the Underlying Action. A true and correct copy of the September 25 Letter is attached as **Exhibit E.**

46. In the September 25 Letter, Depositors and Allied threatened the filing of a lawsuit for declaratory judgment as to their duty to defend WTA in the Underlying Action. *Id.*

47. Through undersigned counsel, on October 9, 2020, WTA responded to the September 25 Letter. Again, WTA reminded Depositors of its duty to defend and demanded reimbursement of the costs and fees incurred for WTA's defense in the Underlying Action. A true and correct copy of the October 9 Letter is attached as **Exhibit F.**

48. Once again, neither Depositors nor Allied remitted payment for costs and fees incurred in defending WTA; instead, on May 4, 2021, Depositors and Allied filed the present action.

## COUNT I: BREACH OF CONTRACT

49. WTA repeats and realleges the allegations within paragraphs 1-48 as if fully stated herein.

50. Depositors is in breach of its agreement with WTA.

51. Specifically, Depositors breached the parties' agreement by failing to defend WTA and/or reimburse WTA for costs and fees incurred in the Underlying Action.

52. As a result of Depositors' breach, WTA has been damaged and has been forced to fund its own defense.

53. As a result, WTA seeks damages in the amount of fees and costs it has incurred, and will reasonably incur, as such sums represent the amount of damages naturally flowing from Depositors' breach.

WHEREFORE, WTA prays that the Court enter judgment:

A. Determining that, by failing to defend WTA in the Underlying Action, Depositors has breached the parties' insurance contract.

B. Awarding WTA damages in an amount to be proven at trial;

C. Granting WTA its costs of this suit, expenses, and attorney's fees expended and incurred herein, including but not limited to, pursuant to Florida Statute sections 627.428 and 626.9373, with post and pre-judgment interest; and,

D. Granting WTA such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

WTA demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 1, 2021

                                                   *s/ Jared DuBosar*
                                                 Matthew Triggs
                                                 Florida Bar No. 865745
                                                 Jared M. DuBosar
                                                 Florida Bar No. 1011630
                                                 PROSKAUER ROSE LLP
                                                 2255 Glades Road, Suite 421A
                                                 Boca Raton, FL 33431
                                                 Tel: (561) 241-7400
                                                 Fax: (561) 241-7145
                                                 E-Mail: mtriggs@proskauer.com
                                                 E-Mail: jdubosar@proskauer.com

Secondary: florida.litigation@proskauer.com

John E. Failla*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: jfailla@proskauer.com

*Application for admission *pro hac vice* to be sought.

*Attorneys for Defendant WTA Tour, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

                                          */s Jared DuBosar*
                                          JARED DUBOSAR

## SERVICE LIST

Ronald L. Kammer
Florida Bar No. 360589
rkammer@hinshawlaw.com
Edward T. Sylvester
Florida Bar No. 051612
esylvester@hinshawlaw.com
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Boulevard, Fourth Floor
Coral Gables, Florida 33134-6044
(T): 305-358-7747 (F): 305-577-1063
*Counsel for Plaintiffs Depositors Insurance Company and Allied Property and Casualty Insurance Company*