**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**CASE NO. 8:21-cv-01069-VMC-JSS**

DEPOSITORS INSURANCE COMPANY and
ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY,

      Plaintiffs,

v.

WTA TOUR, Inc., a corporation, and
MADISON BRENGLE, and individual,

      Defendants.

_____/

### DEFENDANT WTA TOUR, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO DEPOSITORS INSURANCE COMPANY

Defendant WTA Tour, Inc. (the "WTA") moves for judgment on the pleadings against Depositors Insurance Company ("Depositors") as to Count I of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(c) for the reasons expressed herein.

### PRELIMINARY STATEMENT

The WTA seeks insurance coverage under a commercial general liability insurance policy issued by Depositors for an action (the "Underlying Action")[1] brought against the WTA by Madison Brengle (a professional tennis player who plays

---

[1] The Underlying Action was initiated in state court, removed to this Court, and ultimately required to be arbitrated pursuant to this Court's order compelling arbitration. *See* Compl. ¶¶ 15-19. Following the Court's order, Brengle filed her arbitration demand (the "Arbitration Demand") with the American Arbitration Association. *Id.* ¶ 20.

on the WTA tour). Prior to commencing this lawsuit, Depositors reviewed the Underlying Action and agreed to defend the WTA, subject to a reservation of rights. Depositors acknowledged that it made its decision to defend "based upon the allegations of the [Underlying Action], the language of the Policies and the applicable law." ECF No. 1-5 at 2. However, Depositors reneged. It refused to defend the WTA or reimburse any of the costs to defend the Underlying Action and now seeks a declaration that no duty to defend exists. But the same factors that led Depositors to acknowledge coverage then still exist today. Brengle's Arbitration Demand remains unchanged. Depositors' insurance policy still contains the same terms. And Depositors makes no reference to an intervening change in the law regarding its duty to defend, as indeed, there has been none. As demonstrated herein, Depositors got it right years ago when it agreed to defend the WTA. It should now be required to do so.

To establish that coverage exists, the WTA must only demonstrate that any part of the Arbitration Demand fairly and even potentially alleges a claim that the policy potentially covers. The WTA easily meets this burden. Even a cursory review of the Arbitration Demand reveals that it includes an ordinary negligence claim – the type of claim that triggers coverage under standard commercial general liability policies every day of the week. The Arbitration Demand alleges that, due to the WTA's negligence, Brengle was physically injured and suffered from emotional trauma. In insurance terms, this means the Arbitration Demand is covered under the policy. The demand fairly alleges a "bodily injury" caused by an "occurrence." The Arbitration Demand further confirms that the alleged negligence took place within the "coverage territory"

2

(the United States) and during the "policy period" (calendar year 2016). That is all the WTA needs to establish that Depositors must defend the WTA.

The only way Depositors can avoid its contractual duty to defend is if it unequivocally establishes that an exclusion to coverage in the policy applies as a matter of law. That is a heavy burden. Exclusions are strictly and narrowly construed against the insurer. As the Complaint reveals, Depositors seeks to avoid coverage by relying on a single exclusion—the policy's professional services exclusion. But, for the reasons described below, that exclusion has nothing to do with this case.

*First*, the WTA (the insured) does not provide professional services, period. As the Arbitration Demand makes clear, the WTA itself does not conduct drug testing, nor does it manage or control any aspect of that program. Moreover, the WTA does not receive compensation related to anti-doping testing, and neither provides drug testing services to, nor has a provider/client relationship with, any tour player. The Arbitration Demand does not allege otherwise. Thus, the professional services exclusion – which exempts claims for professional services provided by the WTA to others – is inapplicable on its face.

*Second*, Depositors cannot rely on the policy's professional services exclusion because the negligence claims described in the Arbitration Demand are predicated in large part on what Brengle alleges to be the WTA's ordinary negligence. Brengle does not claim the WTA was negligent in the manner testing was performed; rather, Brengle claims the WTA was negligent in failing to exempt her from blood testing. Such an

alleged administrative decision certainly is not a professional service, nor is it alleged to be a decision rendered by a medical professional.

In short, Depositors was correct when it previously agreed to defend the WTA in the Underlying Action.  As a matter of law, the allegations contained in the Arbitration Demand trigger coverage.  The WTA is therefore entitled to judgment on the pleadings that Depositors had – and breached – its duty to defend the WTA.

## BACKGROUND

### A.   Brengle's Arbitration Demand[2]

Brengle initiated the Underlying Action on April 9, 2018, by filing a lawsuit in Manatee County Florida against the WTA, which was subsequently removed to this Court.  In the same action, Brengle also sued the ITF Limited a/k/a International Tennis Federation (the "ITF")[3], along with International Doping Tests & Management AB ("IDTM"), and employees of ITF and IDTM.  Complaint ¶ 15, ECF No. 1 at 3.  Following this Court's order granting the WTA's motion to compel arbitration, Brengle filed her Arbitration Demand.[4]

---

[2] At the outset, the WTA denies the allegations within the Arbitration Demand and liability for the conduct addressed therein.  However, in this action the relevant inquiry is limited to the four corners of the Arbitration Demand and the applicable insurance policy.  The fact that the WTA denies liability and disputes the allegations within the Arbitration Demand has no bearing on Depositors' duty to defend. *See Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1149 (11th Cir. 2019) ("Of course, an insurer must defend against *plainly unmeritorious claims*, as well as claims for which coverage may not clearly exist under the policy." (internal citation omitted)) (emphasis added).

[3] According to the Arbitration Demand, the ITF is the "world governing body for the sport of tennis." Arb. Demand ¶ 22.

[4] "Coverage is determined from examining the most recent amended pleading, not the original pleading." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 582 (Fla. 4th DCA 2000)). Thus, in determining whether a duty to defend exists, the allegations within the Arbitration Demand are what control. *See, e.g., Navigators Spec. Ins. Co. v. inVentiv Health Clinical, Inc.*, 826 F. App'x 199 (3d Cir. 2020)

Madison Brengle is a professional tennis player.  Arb. Demand ⁋ 33.  Brengle's Arbitration Demand alleges that she has been playing professionally since 2007 and has been a member of the WTA Tour since then.  *Id.* ⁋ 2. The Arbitration Demand describes the WTA as "the governing body for professional women's tennis" and the entity that "sanctions national and international professional tournaments."  *Id.* ⁋ 34. According to the Arbitration Demand, the WTA does not conduct any drug testing itself.  Rather, the ITF is alleged to test WTA members (through a blood test) before, during, or after tournaments. *Id.* ⁋⁋ 38-48.  In the Arbitration Demand, Brengle asserts that the purpose of the drug testing administered by the ITF is to "maintain the integrity of tennis and to protect the health and rights of tennis players . . . ."  *Id.*

Brengle alleges that she was injured as a result of such blood testing by the ITF during 2016. *Id.* ⁋ 1.  She did not contend that the WTA conducted such testing, or that the WTA was a medical or testing professional, or that she was a patient or client of the WTA or anyone else.  Instead, Brengle contends the WTA was negligent in failing to exempt her from the testing.  In her words, "had [the WTA] listened to and taken seriously Brengle's substantive and emotional pleas, and had [the WTA] consulted with qualified experts about the consequences to Brengle of the [blood] testing, rather than dismissing her contentions as illegitimate, Brengle would not have suffered, and would not now be suffering, the injuries alleged herein."  *Id.* ⁋ 18.  She contends the WTA should have made "reasonable accommodations" for her and that

<hr>

(affirming district court's decision requiring insurer to defend insured in underlying arbitration because the applicable arbitration demand demonstrated that the claim was covered).

the WTA "breached its duty of care to Brengle by failing adequately to protect the welfare and safety of Brengle, forcing Brengle to undergo venipuncture blood testing . . . ." *Id.* ¶ 155.

### B. The Depositors Policy

At issue in this coverage dispute is a primary businessowners liability policy Depositors sold to the WTA (the "Depositors Policy" or "Policy"). The Policy contains two parts: (i) coverage for loss or damage to the WTA's property and, (ii) coverage for defense and indemnity in suits brought against the WTA for bodily injury or property damage to third parties. The general liability coverage is at issue here. The general liability part of the Depositors Policy provides broad coverage protecting the WTA against suit for damages due to bodily injury or property damage sustained by others due to an occurrence between January 1, 2016, and January 1, 2017 (the "Depositors Policy" or the "Policy"). *See* Compl. ¶ 13, ECF No. 1 at 3; *see also* Depositors Policy, ECF No. 1-2 (Premier Businessowners Policy to WTA, policy number ACP BPOD 3016980284).  Depositors agreed to defend the WTA against these lawsuits even if the allegations are false or groundless.

The Policy expressly provides coverage for "bodily injury" claims:

### A. COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. INSURING AGREEMENT

> a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured

against any "suit"[5] seeking those damages for which there is coverage under this policy.

. . . b. This insurance applies to "bodily injury" . . . only if:

> (1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and

> (2) The "bodily injury" . . . occurs during the policy period . . . .

Depositors Policy § (I)(A)(1), ECF No. 1-2 at 64.  The Policy defines "bodily injury" as "bodily injury . . . sustained by a person." *Id.* § V(3), ECF No. 1-2 at 81. The Policy defines an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful condition." *Id.* § V(13), ECF No. 1-2 at 83.

As do most commercial general liability policies, the Depositors Policy contains a professional services exclusion (the "Professional Services Exclusion"), which provides:

EXCLUSIONS

This insurance, including any duty we have to defend "suits", does not apply to:
* * *
v. Professional Services
"Bodily injury" . . . that arises out of or is a result of the rendering of, or failure to render, any professional service, treatment, advice or instruction. This exclusion includes, but is not limited to []:* * *

[*listing 10 non-exclusive examples of what it describes as professional services, ranging from "legal" and "engineering" to "medical" and "computer consulting"*]

* * *

---

[5] A "Suit" includes an arbitration proceeding. *See* Depositors Policy Definition V(18), ECF No. 1-2 at 84.

> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the rendering or failure to render any professional service.

*See* Depositors Policy § I(A)(2)(v), ECF No. 1-2 at 70-71.

By letter dated October 2, 2018, Depositors initially denied coverage of the Underlying Action, relying on, among other things, the Professional Services Exclusion. *See* ECF No. 9-1. After considering the WTA's response to its denial, Depositors changed course and agreed to defend the WTA in August 2019 (albeit under a reservation of rights), advising the WTA:

> During our investigation, we reviewed the Arbitration Demand, the litigation from which the Demand arose, various public records, miscellaneous document and the Policies. ***Based upon the allegations of the Arbitration Demand, the language of the Policies and the applicable law, Depositors will provide a defense to the WTA*** . . . .

ECF No. 1-5 at 2 (emphasis added). But Depositors never did so. It never actually provided or paid for a defense and instead filed this lawsuit, claiming the Professional Services Exclusion bars coverage and seeking a declaration that it has no duty to defend the WTA in the Underlying Action. *Id.*

The WTA timely filed its answer, affirmative defenses, and counterclaim. *See* ECF No. 9. The WTA denies that Plaintiffs are entitled to the requested declarations and also filed a breach of contract counterclaim against Depositors based on its breach of its duty to defend the WTA in the Underlying Action. Depositors answered the counterclaim, *see* ECF No. 23, therefore the pleadings are closed.

## LEGAL STANDARD

"[I]n a motion for judgment on the pleadings the court reviews the pleadings and attached exhibits . . . ." *See Corey-Kerlin Funeral Home, P.A. v. Nationwide Prop. & Cas. Ins. Co.*, No. 14-cv-13, 2014 WL 12617460, at *2 (M.D. Fla. June 26, 2014) (quoting *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Scott v. Taylor*, 405 F.3d 1251, 1253 (11th Cir. 2005) (citation omitted).

Because the issue of whether an insurer has a duty to defend its insured is a legal issue, based upon the insurance contract and the allegations within the underlying pleading (both of which are exhibits to the pleadings), the issue is properly determined at the pleadings stage. *See, e.g.*, *Cap. Growth Fin. LLC v. Quanta Specialty Lines Ins. Co.*, No. 07-cv-80908, 2008 WL 2949492, at *6 (S.D. Fla. July 30, 2008) (noting the "duty to defend is a purely legal issue properly determined by laying the allegations of the arbitration claims against the Policy terms").

## ARGUMENT

I. **Depositors has a Duty to Defend Because the Arbitration Demand Alleges Claims Fairly and Potentially Covered by the Policy**

"Under Florida law,[6] an insurance provider's duty to defend an insured party 'depends solely on the facts and legal theories alleged in the pleadings and claims

---

[6] Florida law applies to this diversity action. *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011); *Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193 (11th Cir. 2003); *see also Diaz Fritz Grp. v. Westfield Ins. Co.*, No. 20-cv-785, 2021 WL 1165162, at *4 (M.D. Fla. Mar. 26, 2021)

against the insured.'" *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (quoting *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008)).   In other words, "[d]etermining whether the duty to defend is triggered involves a comparison between the insurance policy at issue and the 'facts and legal theories alleged in the pleadings and claims against the insured.'"  *Scott, Blane, & Darren Recover, LLC v. Auto-Owners Ins. Co.*, 727 F. App'x 625, 631 (11th Cir. 2018) (quoting *Mid-Continent Cas. Co. v. Royal Crane, LLC,* 169 So. 3d 174, 180-81 (Fla. 4th DCA 2015)).

"The duty to defend 'arises when the relevant pleadings allege facts that fairly and potentially bring the suit within policy coverage.'"  *Stephens*, 749 F.3d at 1323 (citing *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995)). "Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy."  *Mid–Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1149 (11th Cir. 2010) (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)).   "If the underlying suit brings even one claim that falls within the scope of coverage, the insurer is obligated to provide a defense for the entire dispute."  *Land's End at Sunset Beach Cmty. Ass'n. v. Aspen Specialty Ins. Co.*, 289 F. Supp. 3d 1259, 1265 (M.D. Fla. 2017).   Critically, "*[a]ny doubt* about whether an insurer is under the duty to defend is resolved in favor of the insured." *Scott, Blane, & Darren Recovery*, 727 F. App'x at 632 (emphasis added).

---

(Covington, J.) ("Considering the policy was issued to a Florida insured, and the underlying litigation occurred in Florida state court, the Court agrees that Florida contract law governs the case.").

Exclusionary clauses are read even more strictly. "Because they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." *Psychiatric Assocs. v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134, 138 (Fla. 1st DCA 1994); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (same). Accordingly, "[w]hen an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast *solely and entirely* within the policy exclusion and are subject to *no other* reasonable interpretation." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1359 (M.D. Fla. 2001) (citations omitted) (emphasis added). Stated differently, the rule that doubts are to be construed in favor of coverage applies with even greater force where an insurer – here, Depositors – seeks to rely on a coverage exclusion.

Application of these rules leads to the inescapable conclusion that Depositors has the duty to defend the WTA. To decide the issue, the Court must resolve two questions. First, does the Arbitration Demand contain any allegations that even "fairly and potentially" fall under the Policy's coverage for "bodily injury" during the policy period? *Yes, it does.* Second, does an exclusion in the Policy bar all coverage clearly and unequivocally as a matter of law? *No exclusion does.* Thus, Depositors has – and breached – its duty to defend the WTA in the Underlying Action.

## II.   The Underlying Action Alleges Claims Fairly and Potentially Covered by the Depositors Policy

The Depositors Policy covers suits alleging "bodily injury" "caused by an 'occurrence' that takes place in the 'coverage territory' . . . [and] occurs during the

policy period."  Depositors Policy § (I)(A)(b)(1-2), ECF No. 1-2 at 64. The WTA therefore has the burden of establishing that at least one claim in the Arbitration Demand fairly or even potentially alleges (i) a "bodily injury"; (ii) caused by an "occurrence"; (iii) taking place in the "coverage territory"; and (iv) during the policy period.  Although the WTA, as the insured, bears this burden, the burden is minimal in view of the broad scope of an insurer's duty to defend.

As discussed below, this case does not present a close call: the Arbitration Demand clearly alleges a covered dispute, meaning the WTA has met its minimal burden to establish Depositors' duty to defend.

### A.    *The Arbitration Demand Alleges Multiple Instances of "Bodily Injury"*

The Arbitration Demand alleges "bodily injury."  The Depositors Policy defines "bodily injury" as "bodily injury . . . sustained by a person."  Depositors Policy § V(3), ECF No. 1-2 at 81.  The Arbitration Demand is replete with allegations of bodily injury.  Brengle claims that she endured "severe pain from her right forearm down to her right hand" (Arb. Demand ¶ 90); swelling, "pain and loss of strength and mobility in her right arm" resulting in an inability to practice (*id.* ¶ 91); "pain and loss of feeling in her right arm" (*id.* ¶ 92); "pronounced bruising" (*id.* ¶ 93); "physical pain and trauma" (*id.* ¶ 59); "severe pain and bruising" (*id.* ¶ 73); loss of sensation in her right leg from the kneecap down to the top of her ankle (*id.*); swelling and discoloration of her foot (*id.* ¶ 80). She also generally claims the WTA's conduct caused her "debilitating physical injuries."  *Id.* ¶ 6.

Further, Brengle claims that the WTA's conduct caused her "emotional and physical trauma." *See, e.g.*, Arb. Demand ¶ 88. Where, as here, the emotional trauma is alleged to have been caused by physical contact, such emotional trauma also qualifies as a "bodily injury." *See, e.g.*, *Herrera v. C.A. Seguros Catatumbo*, 844 So. 2d 664, 668 (Fla. 3d DCA 2003) (finding that the physical intrusion of a cavity search which resulted in depression, headaches and a nervous breakdown sufficiently demonstrated a bodily injury under the policy).

### B.   *The Arbitration Demand Alleges Bodily Injuries Caused By an Occurrence*

The Arbitration Demand alleges that Brengle's bodily injuries were caused by an "occurrence," as defined by the Policy.   The Depositors Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   Depositors Policy § (V)(13), ECF No. 1-2 at 83.   Where, as here, the underlying claimant alleges that the "occurrence" at issue was caused by the insured's negligence, there is no question that such conduct qualifies as an "occurrence." *See, e.g.*, *Empire Indem. Ins. Co. v. Todd James, Inc.*, No. 06-61317, 2007 WL 9700598, at *3 (S.D. Fla. Dec. 21, 2007) ("When the underlying complaint unambiguously uses 'the language of negligence,' it sufficiently alleges an 'occurrence' defined as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" (citation omitted)).   Eleventh Circuit case law, applying Florida law, is in accord. *See Beaver*, 466 F.3d at 1297 ("[S]o long as the complaint can reasonably be read as alleging that the class members' injuries were negligently caused, even if it also may arguably be read as alleging that

the injuries were intentionally caused, the doubt must be resolved in favor of finding a duty to defend."). *See also U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 883 (Fla. 2007) (describing an "occurrence" as an event that is "neither expected nor intended from the standpoint of the insured") (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998)).

Throughout the Arbitration Demand, Brengle alleges that she was injured due to the WTA negligently requiring her to undergo blood testing and failing to offer an alternative drug testing method to avoid her physical and emotional trauma. *See* Arb. Demand ⁋ 6 (alleging the WTA required Brengle to undergo blood tests and failed to "make reasonable accommodations"); *id.* ⁋ 10 (alleging Brengle informed the WTA about the pain she suffered from the blood tests); *id.* ⁋ 11 (alleging the WTA dismissed Brengle's concerns regarding blood testing); *id.* ⁋⁋ 153-57 (raising a negligence claim against the WTA in which Brengle alleges the WTA owed her a duty of ordinary care and breached this duty "by failing adequately to protect the welfare and safety of Brengle, [and] forcing Brengle to undergo venipuncture blood testing under the Anti-Doping Program"). Thus, the Arbitration Demand alleges that Brengle's injuries were caused by an "occurrence."

### C.    The "Occurrences" Allegedly Took Place During the Policy Period

The Depositors Policy applies to "bodily injury" occurring during the "policy period." *See* Depositors Policy § I(A)(1)(b)(2), ECF No. 1-2 at 64. The "policy period" ran from January 1, 2016 to January 1, 2017. *See id.* Common Declarations, ECF No.

1-2 at 12.  Brengle seeks to impose liability upon the WTA for its conduct during January, June, and August 2016. Arb. Demand ¶¶ 54-62 (January 2016); *id.* ¶¶ 63-82 (June 2016); *id.* ¶¶ 83-94 (August 2016).  Each of these alleged instances occurred during the policy period.

### D.      The Arbitration Demand Alleges an Occurrence in the Coverage Territory

Finally, the Arbitration Demand alleges an "occurrence" taking place in the "coverage territory."  Under the Depositors Policy, the "coverage territory" includes claims occurring in the United States.  *See* Depositors Policy § (V)(4)(a), ECF No. 1-2 at 81.  Brengle claims to have suffered injuries due, in part, to conduct occurring at the 2016 U.S. Open in the United States and she sued the WTA in the United States.  *See* Arb. Demand ¶¶ 83-94.

In sum, the Arbitration Demand alleges "bodily injury" caused by an "occurrence" within the "coverage territory," and during the policy period. Thus, the WTA has established that the Arbitration Demand alleges claims fairly and potentially covered by the Depositors Policy, and Depositors must therefore defend the WTA.

## III.   The Professional Services Exclusion Does Not Negate Depositors' Duty to Defend

The WTA has met its burden in establishing that the Arbitration Demand fairly and potentially alleges a covered claim.  Depositors must defend the WTA unless it meets its burden to establish that an exclusion unequivocally applies.   *Divine Motel Grp. v. Rockhill Ins. Co.*, No. 14-cv-31, 2015 WL 4095449, at *6 (M.D. Fla. July 7, 2015) ("[A]lthough the insured bears the burden of proving that a claim is covered by the

insurance policy, the 'burden of proving an exclusion to coverage is . . . on the insurer.'" (quoting *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997))). In its Complaint, Depositors focuses on a single exclusion—the Professional Services Exclusion. *See* Compl. ¶¶ 51-52. But the Professional Services Exclusion does not apply here.

As the name implies, the Professional Services Exclusion bars coverage only where the conduct at issue involves an insured rendering or failing to render a professional service to a client or patient. The Arbitration Demand contains no such allegations. Rather, it alleges what amounts to a typical personal injury claim of ordinary negligence on the part of the WTA. Moreover, even if some of the allegations against the WTA could be construed as the rendering of professional services (they cannot), the exclusion would *still* not bar coverage because other allegations claim that the WTA simply acted negligently in making an administrative decision. As such, Depositors cannot meet its burden to demonstrate that "the allegations of the complaint are cast *solely* and *entirely* within the policy exclusion . . . ." *Northland Cas. Co.*, 160 F. Supp. 2d at 1359 (emphasis added). This is particularly so given that all doubts concerning exclusions are to be resolved in favor of coverage. *Auto-Owners Ins. Co.*, 756 So. 2d at 34.

A.  ***The Professional Services Exclusions Only Applies to Claims for Professional Malpractice by Clients or Patients***

Consistent with the purpose of professional services exclusions, the plain language of the Depositors Policy's Professional Services Exclusion makes clear that

it applies only when a person seeks recovery for bodily injuries arising out of the insured (here, the WTA) rendering or failing to render professional services. *See* Depositors Policy § I(A)(2)(v), ECF No. 1-2 at 70-71 (insurance not applicable to bodily injury "that arises out of or is a result of the rendering of, or failure to render, any professional services, treatment, advice or instruction"). The Policy does not define "professional services"; instead, it contains a list of professional services. The listed services have one thing in common—they are services requiring specialized knowledge or skill, provided to clients or patients of the insured, for a fee, by professionals. For example, the exclusion lists "[l]egal, accounting, insurance, real estate, financial, advertising or consulting service, advice or instruction" as professional services. *Id.* § I(A)(2)(v)(1). It also lists "[m]edical, surgical, psychiatric, chiropractic, chiropody, physiotherapy, osteopathy, acupuncture, dental, x-ray, nursing or any other health service, treatment, advice or instruction" as professional services. *Id.* § I(A)(2)(v)(4).

A professional services exclusion serves the narrow purpose of preventing an insured from obtaining professional liability coverage under a general liability policy. Claims asserted by a client or patient alleging professional malpractice against a professional such as a doctor, lawyer, engineer, or architect, are covered by professional malpractice, or errors and omissions insurance, and not general liability insurance.[7] *See Recs. v. Aetna Life & Cas. Ins.*, 683 A.2d 834, 838-39 (N.J. App. Div.

---

[7] This is in line with the overarching concept that different types of insurance exist in the marketplace to cover different types of conduct. *See Prisco Serena Sturm Artchitects, Ltd. v. Liberty Mut. Ins. Co.*, 126

1996) ("The evident intent of [a professional services exclusion] in a homeowners policy is to exclude coverage for claims that ordinarily would be covered by professional malpractice insurance."); *Frankenmuth Mut. Ins. Co. v. Kompus*, 354 N.W.2d 303, 312 (Mich. Ct. App. 1984) ("The 'professional service' exclusion makes it clear that the policy is not designed to cover malpractice claims. . . . The acts complained of clearly arose out of and during the doctor/patient relationship.").

When the conduct at issue does not relate to the insured's specialized knowledge or skills, the professional services exclusion does not apply. *See St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 898-99 (11th Cir. 2009) ("The majority of courts to address the issue have concluded that the term 'professional services' unambiguously refers to services unique to a specific profession and excludes the business aspects of a professional practice that a professional happens to perform."); *Atlantic Lloyd's Ins. Co. of Tex. v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472, 476-77 (Tex. Ct. App. 1998) ("According to these definitions, it is clear that a professional must perform more than an ordinary task to perform a professional service.  To qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation."); *see also Aerothrust Corp. v. Granada Ins. Co.*, 904 So. 2d 470, 472 (Fla. 3d DCA 2005) (interpreting a list of

---

F.3d 886, 893 (7th Cir. 1997) ("CGL [(commercial general liability)] coverage and professional services coverage serve significantly different functions within the insurance industry.  CGL, as the name suggests, provides comprehensive coverage, while a professional services policy is 'designed to insure members of a particular professional group from the liability arising out of a special risk . . . inherent in the practice of the profession.'" (quoting *Mgmt. Support Assocs. v. Union Indem. Ins. Co.*, 473 N.E.2d 405, 409 (Ill. Ct. App. 1984))).

professional services similar to the ones in the Depositors Policy and concluding "[i]t is apparent from the types of services listed that the services which are meant to be excluded as professional are those which require specialized training").

The exclusion's application is thus limited to claims involving services performed "in the ordinary course" of the insured's practice of its profession and that are "integral" to the insured's profession. *Nat. Gas Pipeline Co. of Am. v. Odom Offshore Surveys, Inc.*, 889 F.2d 633, 636 (5th Cir. 1989) (applying Louisiana law) ("Professional services, in its usual connotation, means services performed by one in the ordinary course of the practice of his profession, on behalf of another, pursuant to some agreement, express or implied, and for which it could reasonably be expected some compensation would be due." (citation omitted)); *see Med. Recs. Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 515 (1st Cir.1998) (for exclusion to apply, the complained of acts must be an integral part of the profession, or acts "that distinguish a particular occupation from other occupations" and finding that fee-setting and sending out bills are not inherent functions in the field of medical records, and therefore not professional services).

Interpreting the Professional Services Exclusion strictly and narrowly is in line with how all exclusions in insurance policies are interpreted. *Psychiatric Assocs.*, 647 So. 2d at 138 ("Because they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses.").

**B.      The Arbitration Demand Does Not Allege That the WTA Rendered or Failed to Render any Professional Services**

Brengle did not allege claims arising from the WTA's rendering of, or failing to render, professional services to her.  The WTA is "the governing body for professional women's tennis . . . ."  Arb. Demand ⁋ 21.  The WTA is not in the business of providing drug testing services – nor does the WTA or any of its employees have any specialized skills or experience to provide such services.  The WTA was sued not for alleged negligence in administering a blood test, interpreting a result, or providing a diagnosis or treatment; rather, it was sued because it would not exempt Brengle from the ITF's blood testing requirements.  *See, e.g.*, *id.* ⁋ 5 (alleging that the WTA required Brengle to undergo testing despite "knowing about, and witnessing the consequences of, the effects of the procedure on Brengle"); *id.* ⁋ 6 ("By forcing Brengle to undergo venipuncture blood testing and refusing to make reasonable accommodations, [the] WTA caused Brengle . . . .").  Mandating an athlete to submit to blood testing required and administered *by another* is not a "professional service" because that does not involve the use of (or failure to use) professional knowledge, skill, experience, or training.  The Professional Services Exclusion thus does not apply.

The Arbitration Demand did not allege that the WTA rendered drug testing to Brengle.  According to the Arbitration Demand, ITF did.  *See id.* ¶ 5 (WTA "accepts the authority of ITF to manage, administer and enforce the Anti-Doping Program").  The WTA does not perform drug testing; does not select or exempt athletes for drug testing; does not determine the types of drug testing to be performed; does not interpret

drug testing; does not charge anyone for such services; and has no professional relationship with Brengle (or any of its members).  *See Ins. Co. of State of Penn. v. Vimas Painting Co.*, No.  4:06-cv-1048, 2007 WL 1412988, at *14 (N.D. Ohio May 10, 2007) (finding the professional services exclusion inapplicable to a painting company's failure to provide medical services because the company had "no professional acumen in providing medical services and thus the 'professional services' exclusion" did not bar coverage) (citation omitted).  Accordingly, the Professional Services Exclusion does not bar coverage here.[8]

### C.    The Arbitration Demand Alleges Ordinary Negligence That is Not Excluded

Even if Brengle's Arbitration Demand had alleged the WTA rendered some professional service, Depositors would still be obligated to defend the WTA because the Arbitration Demand alleges that WTA's non-professional negligent conduct injured Brengle.  Under settled Florida law, when an injury arises out of ordinary negligence, even in the slightest way, the duty to defend is triggered regardless of whether the injury arguably also arose out of the rendering or failure to render a professional service.  Once a pleading includes even a single covered claim, the insurer must defend the entire action.  *See, e.g.*, *Jones, Foster, Johnston & Stubbs, P.A. v. ProSight-Syndicate 1110 at Lloyd's*, 680 F. App'x 793, 797 (11th Cir. 2017) ("[E]ven when the allegations in the complaint are 'partially within and partially outside the coverage of

---

[8] The fact that the Professional Services Exclusion here applies to "supervision" or "monitoring" cannot be isolated from the fact that such conduct still must have "involved the rendering or failure to render any professional service" by the WTA.

the policy, the insurer is obligated to defend the entire suit.'" (quoting *Category 5 Mgmt. Grp. v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011))).

This point was illustrated in Florida's Fourth District Court of Appeal's decision in *Estate of Tinervin v. Nationwide Mut. Ins. Co.*, 23 So. 3d 1232 (Fla. 4th DCA 2009). In *Estate of Tinervin*, a doctor mistreated a patient, due in part to his failure to timely obtain the patient's lab reports. The doctor admitted that he would have chosen a different course of treatment had he seen lab reports earlier. The patient later died and his estate sued the doctor. According to the complaint, the doctor's failure to timely obtain the lab reports was caused (at least in part) by an office administration error. In a subsequent insurance coverage dispute, recognizing that the duty to defend is determined based on the allegations of the underlying complaint, both the trial and appellate courts agreed that the doctor's businessowners' liability insurer was required to provide a defense. *See Est. of Tinervin*, 23 So. 3d at 1238. The insurer there was obligated to defend based on allegations of clerical mistakes, misfiling of laboratory results, a failure to show laboratory results to a physician, misreading of laboratory results, and general negligence in the performance of "non-professional office duties." *Id.*

Such allegations were more than sufficient to trigger a duty to defend, even though the crux of the claim was a failure to render proper medical treatment by a physician.[9] *Id.* *See also Alicea Enters., Inc. v. Nationwide Ins. Co. of Am., Inc.*, 252 So. 3d

---

[9] *Tinervin* illustrates just how different an insurer's duty to defend is versus its duty to indemnify. After affirming the trial court's decision that the complaint at issue triggered a duty to defend, the appellate

799, 801-02 (Fla. 2d DCA 2018) (affirming trial court's denial of insurer's motion for summary judgment as to its duty to defend a claim brought against a pharmacy (the insured) for its allegedly negligent act in providing the claimant's boyfriend with an incomplete drug prescription label because the claimant's "allegations could potentially be deemed as unrelated to professional services and potentially could bring the Tort action at this time within the coverage provided by the Insurance Policy" (internal quotation marks and citation omitted)).

As discussed in Section III(B), the Arbitration Demand does not allege that the WTA rendered or failed to render any professional service. But even if it had, Depositors would still have a duty to defend here. The overarching facts giving rise to Brengle's claim against the WTA are that, consistent with the ITF's requirements, it required Brengle to be drug tested. *See, e.g.*, Arb. Demand ¶¶ 5, 10. The Arbitration Demand further alleges that the WTA negligently required the blood tests to continue even after Brengle complained she suffered physical pain and emotional trauma from the testing. *See id.* ¶ 18. She further faults the WTA for not reaching out to "qualified experts" about "the consequences" of the blood testing. *Id.* These are not professional services, but instead they advance a claim that the WTA negligently disregarded her

---

court ultimately concluded that the facts as adduced at trial demonstrated that the assistant was actually performing professional services, and thus there was no duty to indemnify, notwithstanding the allegations in the complaint. Here, the Court's sole focus is on the duty to defend, which hinges on whether the allegations in the Arbitration Demand raise an "occurrence" covered by the Depositors Policy. Examining the Arbitration Demand leads to the inescapable conclusion that, under the Depositors Policy, the duty to defend exists.

complaints as to the blood testing and made the administrative decision not to exempt her from testing under the rules.

Under *Estate of Tinervin* and *Alicia Enterprises*, even if some of the WTA's conduct fell under the Professional Services Exclusion (it does not), Depositors' duty to defend is still triggered since the Arbitration Demand unquestionably includes allegations of ordinary negligence.  *See Est. of Tinervin*, 23 So. 3d at 1232.  Those cases dealt with conduct arising out of doctor/patient and pharmacist/patient relationships, which are unquestionably professional relationships, none of which is even alleged with respect to the WTA here.  Still the insurer in each of those cases was required to provide a defense because at least one allegation in the underlying complaint referred to the provider's ordinary negligence as a cause of the injury at issue.

This is in accord with the decisions of courts around the country.  When conduct involves both professional and non-professional negligence, the general liability insurer still has a duty to defend regardless of the professional services exclusion. *See also Nat'l Cas. Co. v. W. World Ins. Co.,* 669 F.3d 608, 615 (5th Cir. 2012) ("When the underlying lawsuit alleges injuries resulting from the provision of both professional services and non-professional services, a professional services exclusion does not negate the . . . duty to defend.") (citation omitted); *Gage Cnty. v. Emps. Mut. Cas. Co.*, 937 N.W.2d 863, 875 (Neb. 2020) (same); *Hartford Cas. Ins. Co. v. New Hope Healthcare, Inc.*, 803 F. Supp. 2d 339, 346 (E.D. Penn. 2011) ("Hartford, however, is not relieved of its duty to defend New Hope in the state action. The complaint alleges breaches of professional and non-professional duties.").

## CONCLUSION

WTA's motion for judgment on the pleadings against Depositors on the duty to defend should be granted.

**/s/ Jared DuBosar**
Matthew Triggs
Florida Bar No. 865745
Jared M. DuBosar
Florida Bar No. 1011630
PROSKAUER ROSE LLP
2255 Glades Road, Suite 421A
Boca Raton, FL 33431
Tel: (561) 241-7400
Fax: (561) 241-7145
E-Mail: mtriggs@proskauer.com
E-Mail: jdubosar@proskauer.com
Secondary: florida.litigation@proskauer.com

John E. Failla*
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: jfailla@proskauer.com
*Admitted *Pro Hac Vice.*

*Attorneys for Defendant WTA Tour, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 8, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Jared DuBosar*
Jared DuBosar