**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**CASE NO.: 8:21-cv-01069-VMC-JSS**

DEPOSITORS INSURANCE COMPANY,
and ALLIED PROPERTY & CASUALTY
INSURANCE COMPANY

    Plaintiffs,

vs.

WTA TOUR, INC., and
MADISON BRENGLE,

    Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT WTA TOUR, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS AS TO
DEPOSITORS INSURANCE COMPANY**

    Depositors Insurance Company ("Depositors") and Allied Property & Casualty Insurance Company ("Allied") (collectively, "Plaintiffs"), file this opposition to defendant WTA Tour, Inc.'s ("WTA") Motion for Judgment on the Pleadings as to Depositors Insurance Company [D.E. 38] ("WTA Motion") pursuant to Federal Rule of Civil Procedure 12(c), and Local Rule 3.01. In support of their opposition, Plaintiffs' provide the following memorandum of law.

## INTRODUCTION

Plaintiffs, and not WTA, are entitled to judgment on the pleadings because WTA has been sued for conduct excluded by the professional services exclusion in Plaintiffs' primary policy. WTA argues, in essence, that the exclusion cannot apply because it did not, itself, perform the blood tests causing Brengle's alleged injuries. This characterization of Brengle's arbitration demand (the "Demand"), however, mistakes WTA's self-perceived role in Brengle's injuries with its *alleged* role in Brengle's injuries. The allegations will control Plaintiffs' duty to defend, and so Plaintiffs have no duty to defend WTA.

The Demand alleges that WTA had a policy of requiring blood testing. The Demand also alleges that this blood testing injured Brengle because of her medical condition. Brengle further alleges that WTA, contrary to its own stated policy, declined an accommodation to Brengle for its blood-testing requirement. While

WTA contends that it was not sued for professional conduct excluded by Depositors' policy because it does not perform professional conduct as tennis' governing body, the fact is, however, that Brengle has alleged that WTA has engaged in professional services. It engaged in professional services in mandating the blood testing which caused Brengle's alleged injuries, and it further engaged in professional conduct when it allegedly refused to grant an accommodation. The decision and participation of whether to test or not test, is what WTA has been

2

sued for. Those alleged decisions, and the tests themselves, are professional services excluded under Depositors' policy, and correspondingly under Allied's umbrella policy.

Accordingly, the WTA Motion is due to be denied (and Plaintiffs' motion granted) for two reasons. First, WTA's narrow interpretation of the professional services exclusion is inconsistent with Florida law. Second, WTA's argument that the exclusion cannot apply because professional conduct is not its primary purpose is inconsistent with its alleged acts in Brengle's demand, the acts which control Plaintiffs' duty to defend.[1]

## MEMORANDUM OF LAW

### I. WTA's Narrow Interpretation of the Professional Services Exclusion is Inconsistent with Florida Law.

To be clear there is nothing on the Professional Services Exclusion that required WTA to actually perform the blood tests as WTA suggest. (WTA Motion at 17-18 [D.E. 38]. Florida law provides that exclusions employing "arising out of" language are to be afforded the broadest possible reading. *Travelers Indem. Co. v. Richard McKenzie & Sons, Inc.*, No. 18-13172, 2021 U.S. App. LEXIS 25689, at \*14-15

---

[1] Although irrelevant to the current motions, Depositors did not renege as the WTA falsely claims. Depositors never agreed to defend the WTA unconditionally, rather it agreed to defend subject to a reservation of rights that included the right to file this action and to recoup its fees. (WTA Motion at 2 [D.E. 38]. Also irrelevant for the purposes of the current Motions is whether Brengle's claims may fall within the insuring agreement of the Depositor's policy. Depositors has not moved for Judgment on the Pleadings on that basis. (WTA Motion at 11-16 [D.E. 38].)

3

(citing *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005)).² Correspondingly, Florida law prohibits the placing of limitations upon the plain language of a policy exclusion simply because the exclusion could have been written that way. *Deni Assocs. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla. 1998). So while exclusionary clauses are "construed more strictly," *Psychiatric Assocs. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134, 138 (Fla. 1st DCA 1994), the fact that an exclusionary clause may preclude coverage is not a blank check for reinterpretation of the insurance contract, *see Richard McKenzie & Sons, Inc.*, 2021 U.S. App. LEXIS 25689, at *15.

> When interpreting an insurance policy under Florida law, we bear in mind several interpretive principles. We must interpret the policy's terms in accordance with the plain language of the policies as bargained for by the parties. When a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision. We may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties. That means when contractual language is clear and unambiguous, we cannot indulge in construction or interpretation of its plain meaning.

*Id.* at *15-16 (internal citations and quotations omitted). Simply put, the Court should not create coverage where the policy affords none.

---

² Plaintiffs agree that Florida law controls this case given the Court's diversity jurisdiction. (WTA Motion 9, n.6 [D.E. 38] (citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)).

4

Florida law is also clear that, the mere fact that a term is undefined does not render an exclusion ambiguous. *Deni Assocs.*, 711 So. 2d at 1139; *see Jefferson Ins. Co. v. SeaWorld*, 586 So. 2d 95, 97 (Fla. 5th DCA 1991) ("The mere failure to provide a definition for a term involving coverage does not necessarily render the term ambiguous."). Rather, ordinary principles of contract interpretation govern the interpretation of an undefined term of an insurance policy. *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, 775 F.3d 1268, 1275 n. 23 (11th Cir. 2014) (citing *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014)).

Side-stepping this law, and without citing a Florida case holding that this exclusion is ambiguous, WTA suggests that the absence of a definition for "professional services" necessitates a narrow interpretation of the exclusion. In doing so, WTA attempts to restrict the interpretation to the policy's non-exhaustive list of professional services which the exclusion "includes, but is not limited to." (WTA Motion at 17 [D.E. 38] (citing the Depositors Policy § I(A)(2)(v)(4)).[3] This interpretation ignores the plain, broad, exclusionary language, and deviates from cornerstone principles of contract interpretation. In

---

[3] For the purposes of this opposition, Plaintiffs adopt WTA's citation to the exhibits to the complaint: the Depositors primary policy, as attached to the Complaint as Exhibit A (the "Depositors Policy"); the Allied umbrella policy, as attached to the Complaint as Exhibit B (the "Allied Policy"); and Brengle's arbitration demand, as attached to the Complaint as Exhibit C (the "Demand"). While Plaintiffs' Motion [D.E. 37] separately attached these pleading exhibits for the Court's convenience, (*see* Plaintiffs' Motion at 3 [D.E. 37]), Plaintiffs' do not dispute the form of the exhibits or the Court's ability to rule on the pleadings, incorporating the Complaint's exhibits.

5

arguing for the narrowest interpretation of the exclusion, WTA seeks to rewrite the policy. The list is not exhaustive; it is informative. Even still, as will be explained later, WTA's conduct falls within the listed items of the exclusion.

Florida courts have interpreted the professional services exclusion to be unambiguous, and even considered it in the context of blood testing. *Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co.*, 890 F.2d 368, 370 (11th Cir. 1989) (holding exclusion unambiguous in context of blood testing where a technician as opposed to the person who actually drew the blood was allegedly negligent) ; *see Colony Ins. Co. v. Suncoast Med. Clinic, L.L.C.*, 726 F. Supp. 2d 1369, 1377-78 (M.D. Fla. 2010) (finding exclusion unambiguous in allegations that negligent hiring caused damages). In *Alpha Therapeutic*, a technician failed to test blood properly due to a transcribing error (not even the actual drawing of blood), which caused the technician to perform less testing than required. This resulted in contamination and ultimate destruction of the claimant's plasma products. *Id.* at 369. The policy in question contained near identical base language precluding coverage for "damage caused by the providing or failure to provide any professional service." *Id.* Dispensing with the argument that the undefined term "professional service" was ambiguous, the court concluded "that the error of the medical technician was committed while performing a professional service." *Id.* at 370.

6

Notably, the exclusion in *Alpha Therapeutic* did not even employ the broadening "arising out of" language contained in the Depositors policy. Other cases deciding that acts ancillary to the provision of professional services were not excluded likewise lacked this broadening language. *See, e.g.*, *Aerothrust Corp. v. Granada Ins. Co.*, 904 So. 2d 470, 472 (Fla. 3d DCA 2005) (concluding that a professional services exclusion precluding coverage for damage "due to rendering or failing to render any professional services" did not apply while another exclusion did). Notably again, the exclusion in the Granada policy in *Aeurothrust* provided that "this insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" *due to rendering or failure to render any professional services or treatments* as opposed to "arising out of." *Id.* (emphasis added).[4]

---

[4] *Aerothrust* has been distinguished by the Eleventh Circuit in one case: *Auto-Owners Insurance Co. v. E.N.D. Services.*, 506 F. App'x 920, 925 (11th Cir. 2013) (unpublished). *E.N.D. Services* concluded that a home inspector's services were "professional services." This was because, in the first instance, home inspectors had a national organization setting standards. *Id.* Phlebotomists do as well. The National Phlebotomy Association runs a national education, testing, and certification program. National Phlebotomy Association Certification, National Phlebotomy Association, *http://www.nationalphlebotomy.org/Certified_Phlebotomist* (last visited Sept. 20, 2021) (describing history and the nursing and emergency medical practitioners who should consider a national certification, and setting forth requirement to sit for test from "eligibility" pop-up window)). And while phlebotomists are not currently required to maintain a license in Florida, it is notable that home inspectors were not at the time of the alleged loss in *E.N.D. Services*. And home inspectors, recognized as a professional service by the Eleventh Circuit, are not regulated in every state, just like phlebotomists. *Compare State Regulations*, American Society of Home Inspectors, http://www. https://www.homeinspector.org/Resources/State-Regulations (last visited Sept. 20, 2021) (allowing users to click states to quickly access state regulations), *with FAQ*, National Phlebotomy Association, http://www. https://www.nationalphlebotomy.org/FAQ (last visited Sept. 20, 2021) (noting in the "Phlebotomy Professional Frequently Asked Questions" and "Do I

*Estate of Tinervin v. Nationwide Mutual Insurance Co.*, 23 So. 3d 1232 (Fla. 4th DCA 2009), relied upon by WTA, is distinguishable based on the allegations in that complaint and its more restrictive policy language. In *Estate of Tinervin*, Florida's Fourth District Court of Appeals affirmed the trial court's summary judgment on the professional services exclusion where the plaintiff decedent had died during a three-month delay in receiving test results from an outside lab. *Id.* at 1234. The policy's professional services exclusion precluded coverage for damages "due to rendering or failure to render any professional service." *Id.* at 1235. In a non-jury trial in the coverage action, the trial court focused on whether an employee provided professional medical services within the meaning of the policy's exclusion. *Id.* The trial court eventually concluded that the carrier had a duty to defend because the complaint alleged that the employee was a non-professional employee, but also concluded that the carrier had no duty to indemnify the insured (or, consequently pay the consent judgment) on the basis the liability was caused by the doctor's failure to test or the non-professional employee's failure to furnish reports. *Id.* at 1236.

The Fourth District Court of Appeal affirmed the trial court's decision. After concluding that the exclusion was unambiguous, the court found that the non-

---

need a Phlebotomy Certification" drop-down menu that certain states require certification, as well as it being "increasingly important" for employers).

professional employee's acts were "causally connected to the professional services rendered by the doctor." *Id.* at 1237. The court relied upon *Alpha Therapeutic* to find that the employee's errors precluded any indemnity obligation. *Id.* However, the Court also concluded that the carrier had a duty to defend, based upon alleged acts which were specifically alleged to not be professional in nature. *Id.* at 1238. That is not the case here.

The professional services exclusion in Depositor's policy is broader than that at issue in *Estate of Tinervin* because the exclusion in the Depositors policy contains the phrase "arising out of."[5] (*See* WTA Motion at 24 [D.E. 38].) The differing language materially alters the analysis for WTA. Whereas the trial and appellate courts deciding *Estate of Tinervin* were able to draw distinctions between professional and non-professional conduct on the basis of the "due to" language, the language of the Depositors policy, employing "arising out of" language, requires the Court to take a broader view of what would be excluded, in accordance with Florida law. *See Taurus Holdings, Inc.*, 913 So. 2d at 537.

---

[5] *Compare Estate of Tinervin*, 23 So. 3d at 1235 (quoting exclusionary language), *and* Complaint for Declaratory Judgment and Damages, Exh. 3 at 8, *Estate of Tinervin v. Nationwide Mut. Ins. Co.*, No. 2007CA000657XXXHC (Fla. Cir. Ct. Feb. 28, 2007) (attaching policy as exhibit 3 reflecting complete exclusion language), *with* Depositors Policy § I(A)(2)(v)(4). A copy of the complaint in *Estate of Tinervin* is attached, for convenience, to this opposition as **Exhibit A**. Also for the Court's convenience, the relevant policy language occurs at page 33 of 66 of the exhibit PDF.

9

(explaining that the words "arising out of" mean 'originating from', 'having its origin in', 'growing out of' or 'flowing from', or in short, 'incident to' or 'having connection with. Therefore, for this exclusion to apply, the excluded activity only has to have some connection with, grow out of or flow from the WTA's alleged professional services.[6]

Given the demonstrably broadened language of Plaintiffs' exclusion, the Court should reject WTA's argument that the professional services exclusion does not apply because it did not actually draw the blood is not the law as it would require the Court to rewrite the Policy by removing "arising out of" and replacing that language with "due to." Given the binding authority of *Alpha Therapeutic*, WTA cannot, and indeed does not explicitly, argue that the provision is ambiguous. Further, in light of the Florida Supreme Court's holding in *Taurus Holdings,* WTA's narrowed interpretation of the plain language of the unambiguous professional services exclusion must be rejected.

---

[6] WTA cites *Natural Gas Pipeline Co. v. Odom Offshore Surveys*, 889 F.2d 633, 636 (5th Cir. 1989).  In that case the court applied the professional services exclusion in a CGL policy since the claim arose from the surveyor's negligence in determining the placement of an anchor which damaged a pipeline rejecting the argument that the exclusion did not apply since the employees were operating a computer that produced a map as opposed to actual surveying the ocean floor at the time of the loss, noting that to determine if the exclusion applied the Court must look at the complete array of services performed and not merely the operation of the computer.  This case actually supports the grant of judgement in favor of Depositors.

## II. The Professional Services Exclusion Applies to WTA's Alleged Conduct, Irrespective of its Perception of its Business.

WTA's perception of its business and Brengle's allegations regarding WTA's conduct simply do not line up.[7] WTA posits, in broad strokes, that it is a governing body for professional women's tennis and "is not in the business of providing drug testing services" because it does not perform the testing or manage any aspect of the program (WTA Motion at 20 [D.E. 38].) The first argument that WTA does not actually perform the testing does not mean that Brengle's injuries do not arise out professional services and the second ignores the allegations of the Demand. Moreover labeling the allegations as negligence does not render the exclusion inapplicable, since the alleged facts claim that Brengle's injuries arose out of the decision to draw blood and the drawing of blood is undeniably a professional service, which was done at the WTA's direction. For example, the Demand unequivocally alleges that Brengle seeks to recover from WTA for alleged blood tests performed at WTA's direction, under an alleged blood-testing mandate within WTA's discretion, and for WTA's decision not to grant an

---

[7] Plaintiffs agree that their duty to defend, if any, is controlled by the allegations in the operative pleading, which for this case, is the Demand. (WTA Motion at 4 n.4 [D.E. 38] (quoting *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004)).)

accommodation—an alleged deviation from its own rules. Simply put, WTA's argument that it cannot perform professional services because that is not its business is not only contrary to the law, as its decision to blood test was incident to and had some connection with its business; but is also at odds with Brengle's allegations that she was injured as a result of drawing blood. In fact, WTA's Motion refers to these very allegations. (WTA Motion at 12-13 [D.E. 38].)

The professional services exclusion serves the purpose, as noted by WTA, of preventing an insured from obtaining professional liability coverage under a general liability policy. (WTA Motion at 17 [D.E. 38] (citing *Recs. v. Aetna Life & Cas. Ins.*, 683 A.2d 834, 838-39 (N.J. App. Div. 1996) (finding that a doctor was entitled to coverage under his malpractice policy when a doctor allegedly assaulted a nurse upon learning that his patient had been transferred because the assault arose out of the medical decision to transfer the patient); *Frankenmuth Mut. Ins. Co. v. Kompus*, 354 N.W.2d 303, 312 (Mich. Ct. App. 1984) (finding no coverage under a malpractice policy where a doctor assaulted his patients under the guise of therapy, noting that the professional services exclusion applies because the claims arose out of the doctor-patient relationship)).) WTA argues that "[w]hen the conduct at issue does not relate to the insured's specialized knowledge or skills, the professional services exclusion does not apply." (WTA Motion at 18 [D.E. 38].) Contending that it was not engaging in professional services, WTA

12

argues that professional serves are not its business. It is "the governing body for professional women's tennis . . . ." (WTA Motion at 20 [D.E. 38] (citing the Demand ¶ 21).) Additionally, it "is not in the business of providing drug testing services—nor does the WTA or any of its employees have any specialized skill or experience to provide such services." (WTA Motion at 20 [D.E. 38].)

However, it is not the WTA's recasting of its role which controls the duty to defend; it is the claimant's allegations compared to the policy. *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43. And as noted above, it is the nature of the act itself, not the character of the individual engaging in the act, controls. *E.N.D. Servs.*, 506 F. App'x 927 (citing *Estate of Tinervin*, 23 So. 3d at 1237); *see also Medical Recs. Assocs., Inc. v. American Emp. Surplus Lines*, 142 F.3d 512 (1st Cir. 1998) (finding that overcharging for photocopies was ancillary to the insured's provision of professional services as a medical processor, as opposed to a claim involving the provision of medical records themselves, where the policy at issue required the harm to be caused "by reason of" as opposed to "arising out of"); *Insurance Co. of State of Penn. V. Vimas Painting Co.*, No. 4:06-cv-1048, 2007 WL 1412988, at * 14 (N.D. Ohio May 10, 2007) (interpreting an entirely different, and narrower professional liability exclusion that precluding coverage "due to the rendering of," as opposed to "arising out of" professional services).

One case cited by WTA, *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty*

*Co Greystone, LLC*, 572 F.3d 893, 898-99 (11th Cir. 2009) (deciding on Alabama law), demonstrates the distinction between an insured's business and the alleged acts. There, the Eleventh Circuit considered whether counts sounding in fraud, misrepresentation, and other intentional acts constituted "real estate professional services." The policy at issue only covered "real estate professional services." After discussing relevant Alabama law, the Court concluded that the various counts in the liability complaint were uncovered because "[n]one of these claims are dependent upon the ERA Parties' use of expertise as real estate agents in the sale, exchange, purchase, or rental of real estate." *Id.* at 900-01. The policy at issue in *ERA Oxford* insured real estate professional services, but the nature of the acts alleged pertained to conduct in connection with an attempted merger between two real estate companies. Unsurprisingly, the court found that those allegations, did not qualify as professional services within the policy. Unlike the fraud allegations of *ERA Oxford*, which were clearly separate from "professional real estate services," Brengle's Demand is replete with allegations of WTA, or others under its mandate, performing professional services. Further, Brengle's damages all arise out of the venipuncture testing at WTA's direction and its refusal to grant an accommodation. (Depositors Policy § I(A)(2)(v)(5) (psychological …advice).)

According to the Demand, the WTA provided medical services or other health services to Brengle. For example, the WTA allegedly forced Ms. Brengle to

14

undergo the treatment. (Demand ¶5.) The WTA also allegedly required that testing on multiple instances. (Demand ¶¶ 51, 56-58, 64, 73, 80, 90, 94, 126, 128, 130, 143). WTA's testing mandate and extension of accommodations were allegedly to be provided "based upon medical need." (Demand ¶ 48.) WTA allegedly claimed that "the test will have **no** physical effect on [the athlete's] performance." (Demand ¶ 48 (emphasis and alternation in original).) WTA also allegedly would give medical accommodations, but declined to do so for Brengle upon her first request, subjecting her to more testing. (Demand ¶¶ 55.) WTA eventually granted Brengle's request for a modification, after submitting her to an independent medical assessment, at Brengle's expense. (Demand ¶ 110.)

As previously noted, blood testing is, recognizably, a "professional service." *Alpha Therapeutic*, 890 F.2d at 370; *see also Mason*, 370 F.2d 925 (professional services exclusion precluded coverage for damages because of an injection); *State Farm Fire & Cas. Co. v. Compliance Advantage*, 471 F. Supp. 3d 796, 803 (E.D. Ky. 2020) (finding that professional services exclusion precluded coverage where the insured's acts included "taking, performing and reporting laboratory results of blood and urine samples"); *Doe v. American Red Cross Blood Services,* 377 S.E. 2d 323, 326 (S.C. 1989) (holding that the transfusion of blood is a professional service); *Swassing v. Baum,* 195 Neb. 651, 658, 240 N.W. 2d 24, 28 (Neb. 1976) (holding that the drawing and typing of blood is a professional service); *Osborn v. Irwin Memorial Blood Bank*, 7

15

Cal. Rptr. 2d 101, (Cal. Ct. App. 1992) ("[T]here is no question that donor screening and blood testing are "professional services" for purposes of MICRA."); *Jappell v. Arlington Health Found.*, No. 97-9631, 1998 Va. Cir. LEXIS 375, at *9 (Va. Cir. Ct. Dec. 2, 1998) (finding "that the alleged actions of the defendants in screening, procurement, and storage of blood is both health care and professional services."). Additionally, while the list of professional services in the exclusion is non-exhaustive, the above-noted acts by WTA are "professional services" and, moreover, can be characterized, though not necessarily so, within the exclusion's list in terms of medical service, or any other health service. (Depositors Policy § I(A)(2)(v)(4) (medical…any other health service).

WTA also allegedly provided psychological services blended with its medical services. WTA, despite its testing mandate containing allowance for accommodations, "on several occasions dismissed Brengle's concerns and, instead, opined that Brengle has a phobia and suffers from a psychological fear of injections, and not from a medical condition causing extreme and debilitating physical pain from venipuncture injections." (Demand ¶ 11.) The quoted allegation concerning the basis for WTA's refusal to grant an accommodation is significant in that it emphasizes the acts forming the basis of Brengle's claim. And unlike *ERA Oxford*'s discussion of the coverage grant, Brengle's claims that the WTA rejected her accommodation because she has a phobia and suffers from a

psychological fear of injections fall with the Professional Services exclusion because they grow out of, flow from, are incident to, or have some connection with drawing blood a professional service. In addition, this allegation is tantamount to WTA rendering a medical or psychiatric opinion in that WTA assigned a cause and dismissed Brengle's concerns, leading to the alleged injuries.

"Bodily injury" that arises out of, or is a result of the rendering of or failure to render any professional service, treatment, advice or instruction, including medical or psychiatric services, are specifically excluded under the Depositors Policy.[8] While resort to the non-exhaustive list of excluded services is not necessary, it is notable that each of these acts neatly fit within a listed service, if not one of the exclusion's clear and unambiguous terms. WTA cannot argue that neither it nor its employees "have any specialized skills or experience to provide such services," (WTA Motion at 20 [D.E. 38]), where it is alleged to have mandated and engaged in blood drawing and testing, and further opined on Brengle's supposed phobias. Again, the allegations control and it is the act and not the actor that determines if the professional services exclusion applies. *E.N.D. Servs.*, 506 F. App'x 927.

---

[8] Psychiatry is a licensed profession in Florida. Fla. Stat. § 490.001-.015 (2021).The Eleventh Circuit has stated that psychiatric care is medical care, making it clearly professional in nature. *Cf. Steele v. Shah*, No. 93-3396, 1996 U.S. App. LEXIS 23301, at *12 (11th Cir. July 17, 1996) (discussing psychiatric care as medical care in the context of a 42 U.S.C. § 1983 lawsuit).

17

Even if, as WTA contends, WTA's alleged acts are ancillary to the primary purpose of its business (which they are not), the professional services exclcusion still applies. *See Suncoast Med. Clinic*, 726 F. Supp. 2d at 1377-78 (hiring practices impacting damages were inherently medical in nature); *cf. Atlantic Lloyd's Ins. Co. v. Susman Godfrey, LLP*, 982 S.W.2d 472, 476-77 (5th Cir. 1998) (finding coverage for a defamation claim incident to the sending of an attorney solicitation letter in holding that the professional services exclusion did not preclude coverage because a solicitation letter which is sent before there is an attorney/client relationship and therefore could not involve "counseling, advice, or any other services" and that the preparation of a solicitation letter did not require skills particular to the legal profession). WTA contends that it is alleged to have "simply acted negligently in making an administrative decision." (WTA Motion 16 [D.E. 38].) Even if one accepts that statement as basically true, the decision involved professional services, and Brengle's alleged damages grow out of, flow from, are incident to, or have some connection to the "administrative decisions" by WTA to *require* blood testing and dismiss Brengle's psychiatric condition. Those are the alleged acts that caused Brengle's damages.

The allegations of the Demand, which control Depositors' defense obligations, establish that the WTA Brengle's alleged injuries grow out of, flow from, are incident to, or have some connection with professional services when it

18

enacted and effected its blood-testing mandate—whatever its business's primary purpose. There are no factual allegations that Brengle's alleged damages arise out of anything other than blood testing and WTA's refusal to grant an accommodation.[9] Every item of damage alleged by Brengle, whether physical pain, suffering, or psychological, arises out of those decisions. Brengle's damages all arise out of WTA's alleged decisions to draw blood, as part of its enacted the blood-testing mandate, to have its agent perform the testing, and to refuse to grant an accommodation. Plaintiffs' exclusion applies and, consequently, Depositors has no duty to defend WTA for any of Brengle's claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny WTA's motion for judgment on the pleadings, and respectfully reiterate their request that the Court enter judgment on the pleadings in favor of Plaintiffs, consistent with their own motion for judgment on the pleadings.

---

[9] Brengle's case is readily distinguishable from *Alicea Enterprises. v. Nationwide Insurance Co. of America*, 252 So. 3d 799 (Fla. 2d DCA 2018). There, the complaint against the pharmacy concerned the alleged failure to provide the proper prescription when the allegations of the complaint concerned the facts that the claimant's then-boyfriend had, in fact, given her an abortifacient drug which had caused her to miscarry. The allegations at the trial court level had led to the strange result of the trial court finding that the complaint simultaneously triggered a duty to defend, but could never trigger a duty to indemnify. *Id.* at 801. The Second District Court of Appeals affirmed the trial court's decision on the duty to defend, but reversed it on the duty to indemnify, with no discussion of the allegations in the complaint. Accordingly *Alicea* does not preclude the entry of judgment in favor of Plaintiffs.

19

          HINSHAW & CULBERTSON, LLP

          *s/ Logan G. Haine-Roberts*
          Ronald L. Kammer
          Florida Bar No. 360589
          rkammer@hinshawlaw.com
          Logan G. Haine-Roberts
          Florida Bar No. 112005
          lhaine-roberts@hinshawlaw.com
          2525 Ponce de Leon Blvd.
          Fourth Floor
          Coral Gables, FL 33134
          Telephone: 305-358-7747
          Facsimile: 305-577-1063
          *Counsel for Depositors Insurance Company*
          *and Allied Property & Casualty Insurance*
          *Company*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants and I certify that a copy has been mailed to Defendant, Madison Brengle, 3609 45th Terrace West, Unit 101, Bradenton, Florida 34210.

          */s/ Logan G. Haine-Roberts*
          Logan G. Haine-Roberts
          Florida Bar No. 112005
          lhaine-roberts@hinshawlaw.com